# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE, an individual;<br><br>    Plaintiff,<br><br>  -vs.-<br><br>PORTSMOUTH ABBEY SCHOOL, a private religious school;<br>MICHAEL BOWEN SMITH, an individual; and JOHN DOES 1-60, inclusive;<br><br>    Defendants. | CASE NO. 1:20-cv-500<br><br>**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff JANE DOE, an individual, hereby brings her complaint against Defendants PORTSMOUTH ABBEY SCHOOL, MICHAEL BOWEN SMITH, and DOES 1-60, inclusive, and complains and alleges as follows:

## INTRODUCTION

2. This case arises out of the sexual abuse and exploitation suffered by Plaintiff Jane Doe and committed by her former teacher, Defendant Michael Bowen Smith. The abuse occurred during the years 2012-2014 when Plaintiff was a teenager and attending Portsmouth Abbey School in Rhode Island. As detailed herein, the school knew or should have known that Smith was engaged highly inappropriate behavior and sexual misconduct with a student. Yet, the school failed to take any measures to investigate and put an end to the misconduct and protect its young student. Also, after the sexual abuse was revealed to the school in 2015, the school allowed the perpetrator, Smith, to quietly resign and characterized the situation as simply being about "inappropriate emails."

3. In 2017, Plaintiff approached the school administrators and sought help because Smith was stalking and harassing her over the internet. The school, knowing Plaintiff had a legitimate lawsuit

1

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

against not only Smith, but also against the school, engaged in a scheme to ensure that the statute of limitations for filing a civil lawsuit passed while Plaintiff was being represented by a law firm that the school paid for.  As detailed below, the legal concept of "estoppel" now prohibits PORTSMOUTH ABBEY SCHOOL from being rewarded for its scheme which was aimed at lulling Plaintiff into not filing a lawsuit against the school while she was still under age 21.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendants are citizens of different States and the matter in controversy exceeds the sum of $75,000.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

6. Plaintiff JANE DOE ("Plaintiff") is a resident of the State of New Mexico.  Plaintiff is a victim of sexual abuse perpetrated by her high school teacher while she attended PORTSMOUTH ABBEY SCHOOL in Rhode Island.  Plaintiff's full identity has been concealed from public court filings in order to prevent those not directly involved in this action from learning her identity and making it public.  Such public disclosure would further harm Plaintiff and her family.

7. Defendant PORTSMOUTH ABBEY SCHOOL ("PORTSMOUTH ABBEY" or "School") is a coeducational, Catholic Benedictine boarding and day school for high school students and is located in Portsmouth, Rhode Island.  Defendant PORTSMOUTH ABBEY was the employer of Defendant MICHAEL BOWEN SMITH ("SMITH"), who was a teacher at the School and who sexually abused Plaintiff while she was a student at the School.  Defendant PORTSMOUTH ABBEY was responsible for the supervision and oversight of its employees, including Defendant SMITH and DOES 11-30.

8. Defendant SMITH (who goes by the name "Bo Smith") is a resident of the State of New York.  Defendant SMITH is a former employee of Defendant PORTSMOUTH ABBEY, where he taught for approximately thirteen years before it was discovered that he was sexually abusing Plaintiff.  SMITH was allowed to immediately "resign" his position at the School, in Spring 2015.  SMITH was in his mid-to-late 40s when he abused Plaintiff.  Plaintiff was 15 years old when SMITH'S abuse started.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

9. Defendant DOES 1-10 is the individual who sexually abused Plaintiff, if somehow "Michael Bowen Smith" is not the perpetrator's correct legal name. Defendants DOES 11-30 are current or former employees of Defendant PORTSMOUTH ABBEY, who failed to properly supervise or monitor Defendant SMITH, and who knew or reasonably should have known that Defendant SMITH was sexually abusing Plaintiff but failed to intervene or report the abuse. Defendants DOES 31-60 are persons and/or entities who owed a duty of care to Plaintiff and breached that duty of care, or alter egos of the PORTSMOUTH ABBEY, doing business as such whether in incorporated or unincorporated form. The true names of Defendants DOES 1-60 are unknown to Plaintiff at this time. Plaintiff will amend her Complaint to show the true names and capacities of Defendants DOES 1-60 when they have been ascertained. Each Doe defendant is responsible in some actionable manner for the events alleged herein.

10. At all relevant times, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

//

//

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### *Plaintiff's Background*

11. Plaintiff was recruited during her eighth-grade year by PORTSMOUTH ABBEY and other private schools as a result of her outstanding test scores on a standardized test used for high school admissions.

12. Plaintiff and her parents selected PORTSMOUTH ABBEY, in part, because it appeared to be a well-established, safe, and outstanding boarding school. Plaintiff received a full scholarship from PORTSMOUTH ABBEY based on her academics, test scores, and her background.

13. Plaintiff was only 13 years old when she started at PORTSMOUTH ABBEY in Fall 2010. Plaintiff was a shy and introverted girl who excelled academically.

14. Plaintiff moved across the country to attend PORTSMOUTH ABBEY.

15. Plaintiff's freshman year at the School was 2010-2011.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

***Defendant SMITH Grooms And Sexually Abuses Plaintiff***

16. Plaintiff knew of Defendant SMITH during her freshman year, but had no significant interactions with him.

17. Plaintiff first had SMITH as a teacher during her sophomore year (2011-2012). Plaintiff excelled in humanities, which SMITH taught. Plaintiff was 14 years old when she first had SMITH as her teacher.

18. SMITH showed great interest in Plaintiff and started to manipulate and groom her during her sophomore year. SMITH knew Plaintiff was far from home and that she was a very shy and introverted girl and was somewhat lonely.

19. SMITH, like most predators, targeted Plaintiff and then started grooming her by spending time with her outside of class, by complimenting her, by having "adult-type" discussions with her, by making her feel 'special' both in class and outside of class, by telling others (in her presence) how impressive and smart she was, and by doing similar things to gain Plaintiff's trust and friendship, and build an unprofessional relationship beyond that of a normal teacher-student relationship. SMITH also shared personal information about his life with her and she in turn started to do the same with him. SMITH then started to flirt with Plaintiff, and eventually introduced sexual banter into their conversations. Again, this is a common scheme or plan of adults targeting children for sexual abuse.

20. Plaintiff had never had any sexual experience in her life up until this point in time. SMITH knew that and took advantage of that also.

21. Toward the end of her sophomore year (Spring 2012), when Plaintiff was 15, SMITH invited Plaintiff to stop by his apartment, residential quarters supplied by the PORTSMOUTH ABBEY on their campus. It was at that time that SMITH first engaged in sexual acts with Plaintiff.

22. That summer Plaintiff returned home, but SMITH regularly communicated with her, mostly over email.

23. When Plaintiff returned to PORTSMOUTH ABBEY in the Fall 2012, SMITH continued to pursue her. SMITH's acts of sexual abuse intensified and became more frequent. SMITH would direct Plaintiff to come visit him in a room or office that was in a dorm used for day students, where he

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

would then engage in sexual abuse of her.  This happened frequently throughout Plaintiff's junior year of high school.

24. SMITH continued to manipulate Plaintiff by telling her how special she was, how mature she was, how she was different from other female students, and similar things.  These were all aimed at manipulating Plaintiff's emotions.

25. The sexual abuse continued throughout Plaintiff's senior year (2013-2014).  SMITH was again Plaintiff's teacher.  During her senior year, SMITH directed Plaintiff to visit him at his on-campus apartment.  He would have Plaintiff use a hallway that connected a student dorm to the building where staff lived.  The hallway actually led to a door that was SMITH'S basement.  He would have Plaintiff enter and leave using that route.

### *Warning Signs Of SMITH's Misconduct*

26. During Plaintiff's sophomore year (2011-12) at PORTSMOUTH ABBEY, before any sexual abuse ever occurred, Plaintiff's mother complained to the school that SMITH was violating normal teacher-student boundaries with her daughter and SMITH was having too much influence over Plaintiff.  Plaintiff's mother certainly did not suspect child abuse, but rather was very concerned that SMITH was injecting himself into Plaintiff's life in a way that clearly violated normal teacher-student boundaries.

27. Administrators and staff at PORTSMOUTH ABBEY brushed the complaint aside and assured Plaintiff's parents that there was nothing amiss.  The School made it clear they felt like Plaintiff's parents were being an annoyance by complaining.

28. During Plaintiff's junior and senior years, SMITH had Plaintiff around him so frequently that other staff, teachers, and students were highly suspicious of the relationship.

29. At one point, some students saw SMITH and Plaintiff in an outdoor area adjacent to the campus that they had no legitimate reason to be at, and again there was much discussion that SMITH was engaged in an improper and inappropriate relationship with his female student, but no action was taken to protect Plaintiff from the known risk presented.

### *Plaintiff Graduates From PORTSMOUTH ABBEY, And Then Reveals The Abuse*

5

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

30. Plaintiff graduated from PORTSMOUTH ABBEY in or around June 2014. She was 17 years old. SMITH continued to sexually abuse Plaintiff up until the end of high school and beyond.

31. Plaintiff attended college on the East Coast, starting in 2014. In Spring 2015, during her freshman year, she gained insight and clarity into what SMITH had done to her – how he manipulated her, abused her, took advantage of her, and turned her against her friends and her family. As a result, Plaintiff started having serious emotional issues and went into a tailspin. This, in turn, caused her to drop out of college at that time. She revealed the sexual abuse to her parents at this time.

32. Plaintiff's parents reported SMITH'S misconduct to PORTSMOUTH ABBEY. Specifically, Plaintiff and her parents told the Headmaster, Mr. Daniel McDonough, and the Assistant Headmaster, John Perreira, of the sexual abuse by SMITH during Plaintiff's time at the school. These administrators were told that sexual acts occurred and were provided with emails written by SMITH that showed clear proof of his sexual abuse of Plaintiff.

33. Instead of conducting a full-scale investigation, PORTSMOUTH ABBEY's administrators McDonough and Perreira simply allowed SMITH to quietly resign.

34. On information and belief, PORTSMOUTH ABBEY and its two administrators failed to report the information they had about SMITH to law enforcement or other authorities for further investigation.

35. On information and belief, SMITH went on to obtain a teaching position at Sienna College, a Catholic school in upstate New York, at some point after his "resignation" from PORTSMOUTH ABBEY.

36. On information and belief, Sienna College contacted PORTSMOUTH ABBEY for a recommendation before hiring SMITH.

### *SMITH Stalked And Harassed Plaintiff*

37. After resigning from PORTSMOUTH ABBEY in Spring 2015, SMITH embarked upon a relentless pattern of harassment and cyber-stalking behavior against Plaintiff.

38. From 2015-2017, SMITH would track Plaintiff online and cyberstalk her. He sent her strange emails from different email accounts (she had blocked his account). Plaintiff became very concerned for her well-being and safety and the stalking and harassment caused her great distress.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

***PORTSMOUTH ABBEY Dupes Plaintiff Into Believing It Wanted To "Help Her" Which Is The Basis For "Estoppel" As It Relates To Any Defense Based On The Statute Of Limitations.***

39. In or about February 2017, after SMITH continued to harass and cyberstalk her, Plaintiff reached out to PORTSMOUTH ABBEY for help. She did not know what else to do at this point. Plaintiff was twenty years old at this time.

40. In response, PORTSMOUTH ABBEY commenced a scheme to lull Plaintiff into losing her right to bring a civil lawsuit against the School. Headmaster McDonough and Assistant Headmaster Perreira were both informed by Plaintiff that SMITH had taken advantage of her sexually as a child, and then continued to harass her and she was distressed as a result of it. These administrators wanted to keep the potential scandal contained, and commenced to do so by "steering" Plaintiff to use the School's outside consultant to "help" her out of this predicament.

41. PORTSMOUTH ABBEY'S administrators steered Plaintiff to a "consultant," Kathleen McChesney of Kinsale Management Consulting. McChesney typically provided consulting to businesses and religious organizations, including the Catholic Church, who had some type of public relations or other crisis or some security matter that needed to be dealt with. She was affiliated in the past with the United States Catholic Bishops' Conference and later, the Catholic Church's Office of Child Protection. The Catholic Church has honored her in the recent past for her services to the Church.

42. Trusting PORTSMOUTH ABBEY, Plaintiff spoke with McChesney and explained the situation. McChesney had Plaintiff write a short note directed at SMITH that essentially said "leave me alone!" and McChesney had one of her agents hand-deliver it to SMITH.

43. On information and belief, PORTSMOUTH ABBEY did not retain McChesney to investigate and determine what safeguards at the School had failed that allowed SMITH to repeatedly sexual abuse Plaintiff on campus for over two years. Yet, that was McChesney's specialty in her company. All PORTSMOUTH ABBEY did was direct Plaintiff to "use McChesney's services."

44. PORTSMOUTH ABBEY paid, or at least told Plaintiff it would pay, for McChesney's services aimed at "helping" Plaintiff.

45. McChesney never told Plaintiff that she had a potential civil lawsuit against PORTSMOUTH ABBEY. McChesney never told or explained to Plaintiff what a "statute of limitations" was in the context of bringing a lawsuit.

46. After delivering the "leave me alone" note to SMITH, McChesney then "referred" Plaintiff to a New Mexico law firm, Lewis Roca Rothgerber Christie ("Lewis, Roca"). (Plaintiff was living in New Mexico at this time.) McChesney had a professional relationship of some sort with law partners at that law firm.

47. Unbeknownst to Plaintiff, this law firm actually represented the Catholic Church (through its Dioceses). It had a law partner who headed up a "Religious Institutions" practice group that had represented the Catholic Church in the recent past, presumably related to sexual abuse claims. This was a "defense" law firm that represented businesses and churches. This was not a "plaintiff's" law firm, that represented survivors of abuse in cases brought against entities like the Catholic Church and religious schools like PORTSMOUTH ABBEY.

48. In a February 2017 email, McChesney told law partner Scott Browning (of the Lewis Roca firm), "I have a new client in Albuquerque who may be in need of representation with regard to being abused in a religious school." Mr. Browning was the law partner in charge of the Religious Institutions practice group at the firm; he routinely represented, not prosecuted, the Catholic Church and other religious entities.

49. In fact, Mr. Browning's biography on the law firm's website boasted that he and his firm had represented numerous religious institutions in litigation, including "help[ing] six Catholic dioceses in California resolve hundreds of personal injury claims." Yet, he assured McChesney that he and his firm could help Plaintiff.

50. On information and belief, McChesney had referred other business or religious entity clients to the Lewis, Roca firm in the past and knew the firm was a "defense" firm that routinely represented the Catholic Church.

51. Plaintiff retained Lewis, Roca and its lawyers to "help her." Despite knowing that Plaintiff had been abused by SMITH at PORTSMOUTH ABBEY, none of the lawyers working on her case ever informed Plaintiff that she had a potential lawsuit against PORTSMOUTH ABBEY, nor did

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

they inform her about any potential or real statute of limitations for her claims against PORTSMOUTH ABBEY. Finally, they never advised her that although she needed representation with regard to her abuse in a religious school, their representation was limited such that they would not be advising her of the necessity of taking action against the institution.

52. Instead, the Lewis, Roca lawyers told Plaintiff she should let them pursue a "temporary restraining order" against SMITH and that her case was one involving "domestic violence." This was absurd. Plaintiff had been sexually abused by her adult teacher. The perpetrator continued to cyberstalk Plaintiff several years after she revealed the abuse. And yet, these lawyers deemed this to be a "domestic violence" case, presumably meaning one between two adults who co-habited together or had a similar type of relationship.

53. PORTSMOUTH ABBEY paid for the lawyer fees related to Plaintiff being represented by Lewis, Roca.

54. Lewis, Roca never explained or informed Plaintiff about this serious conflict of interest: (1) that the firm routinely represented the Catholic Church; and (2) that a potential conflict could exist when the School paid for Plaintiff's lawyers' fees, given that Plaintiff had a real, potential civil lawsuit against the School.

55. Lewis, Roca never informed Plaintiff that she had a potential civil case against PORTSMOUTH ABBEY, nor that there was a statute of limitations that bar lawsuits if brought too late.

56. Plaintiff was twenty years old when she was steered to and then retained the Lewis, Roca law firm. The law firm represented her from early 2017 until at least November 2017. Plaintiff turned age 21 in October 2017.

57. In Rhode Island, the statute of limitations for bringing a civil lawsuit against a school such as PORTSMOUTH ABBEY was age 21, meaning the victim had to file a lawsuit before age 21, or was barred from ever bringing such a suit in the future, barring exceptional circumstances. The law firm hired to "help" Plaintiff kept her as a client until at least November 2017, which was after Plaintiff turned age 21.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

58. The lawyers at Lewis Roca never obtained a restraining order against SMITH. Instead, they "slow walked" Plaintiff's case, always asking Plaintiff for more and more unnecessary information, and telling her how difficult it was to obtain a TRO against SMITH. Yet, they billed their lawyers' time to PORTSMOUTH ABBEY for payment. In the meantime, they allowed the statute of limitations to lapse for Plaintiff's claims against PORTSMOUTH ABBEY. The statute of limitations ran on Plaintiff's 21st birthday, in October 2017. Lewis, Roca represented Plaintiff until November 2017, then told her they were going to "close" her file.

59. SMITH continued with his harassment and cyberstalking of Plaintiff, and his harassment continues even up to the present time. SMITH has sent Plaintiff strange and bizarre emails from different email accounts over the past five years. SMITH went so far as to figure out where Plaintiff was attending college in 2020, and then sent emails to her academic advisors and mentors, telling them about the "relationship" he and Plaintiff had back in high school. SMITH somehow determined who Plaintiff's new boyfriend was, and sent him bizarre emails that were threatening in nature. And, SMITH continues to send emails to Plaintiff. Plaintiff is legitimately concerned for her well-being and her safety. Nothing McChesney or the law firm Lewis, Roca did was of any help whatsoever in putting an end to SMITH'S harassment.

## FIRST CLAIM FOR RELIEF

### SEXUAL ABUSE

**(Against Defendant SMITH and DOES 1-10)**

60. Plaintiff realleges and reincorporates as if fully stated herein each and every allegation contained in paragraphs 1-59 of this Complaint.

61. While Plaintiff was a student at PORTSMOUTH ABBEY, Defendant SMITH took advantage of his position of authority and trust as Plaintiff's teacher to engage in unlawful sexual acts and other harmful misconduct toward Plaintiff. Plaintiff did not consent to the acts. The sexual misconduct at PORTSMOUTH ABBEY took place between 2012 and 2014.

62. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to physical and mental pain and suffering, severe emotional distress,

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

psychological harm, physical injuries, past and future costs of medical care and treatment, past and future loss of earnings and earning capacity, and other damages.

63. In committing the acts described herein, the conduct of Defendant SMITH was motivated by malice and ill-will, justifying an award of punitive damages against Defendant SMITH, in an amount to be proven at the time of trial.

## SECOND CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant SMITH, PORTSMOUTH ABBEY, and DOES 1-10)

64. Plaintiff realleges and reincorporates as if fully stated herein each and every allegation contained in paragraphs 1-63 of this Complaint.

65. Acting with knowledge of his superior position and his relationship with Plaintiff, and realizing Plaintiff's special susceptibility to emotional distress due to her young age, inexperience, and vulnerability, Defendant SMITH commenced upon a course of intentionally grooming and manipulating Plaintiff, so that he could ultimately coerce and convince Plaintiff to engage in sexual acts.

66. The misconduct of Defendant SMITH was outrageous, particularly because of the age difference between himself and Plaintiff and because he was Plaintiff's teacher. Defendant SMITH used this trust to his advantage by manipulating Plaintiff's emotions and exploiting them sexually.

67. After Plaintiff revealed the sexual abuse in 2015, SMITH embarked upon a course of intentional conduct aimed at inflicting serious distress upon Plaintiff by cyber-stalking her and sending her bizarre and threatening emails. This continued from 2015 to the present. SMITH also sent bizarre and/or threatening emails to Plaintiff's academic advisors and mentors at college, to her boyfriend, and to her friends. PORTSMOUTH ABBEY is liable for this ongoing misconduct and also had a duty to put an end to it given that SMITH formerly worked for them and his harassment of Plaintiff commenced while the two of them were at PORTSMOUTH ABBEY. PORTSMOUTH ABBEY was made aware of SMITH's stalking behavior and took little to no action to prevent it from continuing to occur.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

68. The acts of Defendant SMITH were intentional, willful, oppressive, and malicious, and done for the purpose of causing Plaintiff to suffer emotional harm, humiliation, mental anguish, and emotional distress, or with reckless or callous indifference for the likelihood that they would cause Plaintiff such distress. Their actions justify the imposition of an award of punitive damages against them.

69. As a direct and legal result of Defendant SMITH's misconduct, Plaintiff has been damaged emotionally and physically, and otherwise, all to Plaintiff's damages in an amount to be proven at the time of trial.

## THIRD CLAIM FOR RELIEF

### NEGLIGENT SUPERVISION, HIRING, OR RETENTION

**(Against Defendants PORTSMOUTH ABBEY and DOES 11-30)**

70. Plaintiff realleges and reincorporates as if fully stated herein each and every allegation contained in paragraphs 1-69 of this Complaint.

71. Defendants PORTSMOUTH ABBEY and DOES 11-30 had the responsibility and duty to adequately and properly investigate, hire, train, and supervise their agents and employees who would be working with students so as to protect the students from harm caused by unfit and dangerous individuals hired or retained as teachers.

72. Defendants PORTSMOUTH ABBEY and DOES 11-30 knew or should have known that Defendant SMITH was unfit to be a teacher at PORTSMOUTH ABBEY. Said defendants failed to investigate complaints made against Defendant SMITH by Plaintiff's mother during Plaintiff's sophomore year. Defendants, including staff and employees, failed to report and investigate information that SMITH was engaged in misconduct with Plaintiff. Finally, Defendants PORTSMOUTH ABBEY and DOES 11-30 failed to properly supervise Defendant SMITH and Plaintiff while on campus, thereby allowing Defendant SMITH to sexually abuse Plaintiff while on campus.

73. Defendants PORTSMOUTH ABBEY and DOES 11-30 breached its duty to properly and adequately investigate, hire, train, monitor and/or supervise Defendant SMITH.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

74. Had Defendants PORTSMOUTH ABBEY and DOES 11-30 properly investigated, supervised, trained, and/or monitored the conduct and actions of Defendant SMITH, they would have discovered that Defendant SMITH was unfit to be employed. By failing to adequately supervise, monitor, or investigate Defendant SMITH, Defendants PORTSMOUTH ABBEY and DOES 11-30 allowed Defendant SMITH to continue, unhindered, with his predatory conduct directed toward students, including Plaintiff.

75. Defendants PORTSMOUTH ABBEY and DOES 11-30 negligently hired, supervised, retained, monitored, and/or otherwise employed Defendant SMITH, and negligently failed to ensure the safety of a student, Plaintiff, who was entrusted to their custody, care, and control.

76. Defendants PORTSMOUTH ABBEY and DOES 11-30 also negligently failed to adequately implement, adopt or enforce any policies or procedures that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of students by teachers. If such policies were in place, then Defendants failed to properly follow its own policies and procedures for recognizing, investigating, and reporting suspected child abuse.

77. Had Defendants PORTSMOUTH ABBEY and DOES 11-30 performed their duties and responsibilities to monitor, supervise, and/or investigate their employee SMITH, Plaintiff would not have been subject to the sexual abuse and other harmful conduct inflicted upon her.

78. Defendants are estopped from asserting any statute of limitations as a defense to Plaintiff's claims against the School based upon the School's deliberate and intentional conduct aimed at lulling Plaintiff into allowing the statute of limitations to pass in 2017 when they first steered her to McChesney, who in turn steered her to the Lewis, Roca firm. PORTSMOUTH ABBEY should not be rewarded by allowing it to invoke a statute of limitations defense, given its culpability in manipulating Plaintiff to unknowing fall prey to a scheme to ensure the statute of limitations passed without Plaintiff filing a timely lawsuit.

79. As a direct and legal result of the acts and omissions of Defendants PORTSMOUTH ABBEY and DOES 11-30, Plaintiff suffered physical and emotional injuries and other harm, including economic and non-economic damages in an amount to be proven at the time of trial.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

# FOURTH CLAIM FOR RELIEF

# BREACH OF MANDATORY DUTY – FAILURE TO REPORT SUSPECTED CHILD ABUSE

### (Against Defendants PORTSMOUTH ABBEY and DOES 11-30)

80. Plaintiff realleges and reincorporates as if fully stated herein each and every allegation contained in paragraphs 1-79 of this Complaint.

81. Defendants PORTSMOUTH ABBEY and DOES 11-30 were at all times relevant herein subject to provisions of Rhode Island law (Rhode Island General Law § 40-11-3) which requires reporting known or reasonably suspected incidents of child abuse (whether sexual or otherwise) to a child protective agency immediately upon learning of such incidents. Defendants PORTSMOUTH ABBEY and DOES 11-30 were mandated reporters. Headmaster McDonough and Assistant Headmaster Perreira were mandatory reporters of suspected child abuse.

82. Defendants PORTSMOUTH ABBEY, acting through its employees DOES 11-30, had or should have had reasonable suspicion that Defendant SMITH was engaged in sexual misconduct aimed at Plaintiff, yet failed to report the suspected abuse to the authorities.

83. Defendants PORTSMOUTH ABBEY and DOES 11-30 failed to report the suspected abuse of Plaintiff to any law enforcement agency or child protective services as required by Rhode Island General Law § 40-11-3. By failing to report known or suspected instances of child abuse, Defendants PORTSMOUTH ABBEY and DOES 11-30 violated Rhode Island General Law § 40-11-3.

84. When Defendant PORTSMOUTH ABBEY, through its employees DOES 11-30, violated Rhode Island General Law § 40-11-3, the employees/agents were acting within the course and scope of their employment or agency with PORTSMOUTH ABBEY. The failure of Defendants PORTSMOUTH ABBEY and DOES 11-30 to report Defendant SMITH allowed Defendant SMITH to continue, unhindered, in his sexual abuse of Plaintiff.

85. Had Defendants PORTSMOUTH ABBEY and DOES 11-30 fulfilled their mandatory duty to report suspected child abuse, Plaintiff would not have been subject to the sexual abuse perpetrated by Defendant SMITH.

86. Defendants are estopped from asserting any statute of limitations as a defense to Plaintiff's claims against the School based upon the School's deliberate and intentional conduct aimed

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

at lulling Plaintiff into allowing the statute of limitations to pass in 2017 when they first steered her to McChesney, who in turn steered her to the Lewis, Roca firm. PORTSMOUTH ABBEY should not be rewarded by allowing it to invoke a statute of limitations defense, given its culpability in manipulating Plaintiff to unknowing fall prey to a scheme to ensure the statute of limitations passed without Plaintiff filing a timely lawsuit.

87. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, past and future loss of earnings and earning capacity, and other damages.

///
///
///
///
///

# FIFTH CLAIM FOR RELIEF

## NEGLIGENCE

### (Against Defendants PORTSMOUTH ABBEY and DOES 11-60)

88. Plaintiff realleges and reincorporates as if fully stated herein each and every allegation contained in paragraphs 1-87 of this Complaint.

89. Defendants PORTSMOUTH ABBEY and DOES 11-60 owed a duty of care to Plaintiff, or had a duty to control the conduct of Defendant SMITH by way of the special relationship existing between those individuals.

90. Defendants PORTSMOUTH ABBEY and DOES 11-60 knew or should have known about the misconduct and sexually predatory behavior of Defendant SMITH directed to minors, including Plaintiff, that he interacted with at PORTSMOUTH ABBEY.

91. Despite having knowledge of the misconduct of Defendant SMITH, Defendants PORTSMOUTH ABBEY and DOES 11-60 failed to take any preventative action to control, curb,

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

and/or prevent that conduct, and failed to warn Plaintiff or her parents of that wrongful conduct, despite having a legal duty to do so.

92. As a direct and legal result of the negligence of Defendants PORTSMOUTH ABBEY and DOES 11-60, Plaintiff was sexually assaulted and abused by Defendants SMITH.

93. Defendants PORTSMOUTH ABBEY and DOES 11-60 fulfilled their duties and responsibilities, Plaintiff would not have been subject to all or most of the misconduct perpetrated against her.

94. Defendants are estopped from asserting any statute of limitations as a defense to Plaintiff's claims against the School based upon the School's deliberate and intentional conduct aimed at lulling Plaintiff into allowing the statute of limitations to pass in 2017 when they first steered her to McChesney, who in turn steered her to the Lewis, Roca firm. PORTSMOUTH ABBEY should not be rewarded by allowing it to invoke a statute of limitations defense, given its culpability in manipulating Plaintiff to unknowing fall prey to a scheme to ensure the statute of limitations passed without Plaintiff filing a timely lawsuit.

95. As a direct and legal result of Defendants PORTSMOUTH ABBEY and DOES 11-60 having breached their duty to properly supervise and/or warn Plaintiffs of the wrongful conduct, Plaintiff suffered severe and permanent injuries including, but not limited to physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, past and future loss of earnings and earning capacity, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JANE DOE requests entry of judgment in her favor and against Defendants PORTSMOUTH ABBEY SCHOOL, MICHAEL BOWEN SMITH, and DOES 1-60, inclusive, as follows:

    A. For compensatory damages, including economic and noneconomic damages;

    B. For punitive damages against all defendants;

    C. For reasonable costs of this suit;

    D. For interest; and

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**

E. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: December 1, 2020								TJC ESQ, PSC

										By: _____
										Timothy J. Conlon
										Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff JANE DOE hereby demands a trial by jury.

Dated: December 1, 2020								TJC ESQ, PSC

										By: _____
										Timothy J. Conlon
										Attorneys for Plaintiff

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE**