UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JANE DOE,

          Plaintiff,

v.                                           C.A. No.: 2020-500-WES-PAS

ORDER OF ST. BENEDICT in PORTSMOUTH,
RHODE ISLAND, a religious entity,
MICHAEL BOWEN SMITH, an individual,
and JOHN DOES 1-60, inclusive,
          Defendants.

**DEFENDANT ORDER OF ST. BENEDICT IN
PORTSMOUTH, RHODE ISLAND'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Order of St. Benedict in Portsmouth, Rhode Island ("Portsmouth Abbey") moves to dismiss all counts pled against it in Plaintiff's First Amended Complaint (Doc. No. 11).

## I.  Introduction

Plaintiff Jane Doe ("Jane"), a pseudonym, graduated from Portsmouth Abbey over six and a half years ago in June 2014.  Jane pleads claims for personal injuries against her high school alma mater due to alleged sexual abuse committed against her by a former faculty member, Defendant Michael Bowen Smith ("Smith"), who has not been employed at Portsmouth Abbey for nearly six years.

Portsmouth Abbey has recognized and responded to the seriousness of Jane's claims. Portsmouth Abbey took prompt appropriate actions in the spring of 2015 when Jane and her parents reported allegations against Smith.  The school provided prompt assistance to Jane in February 2017 when she sought its help, as Smith (who was not employed at the school since 2015) harassed her from his location outside of Rhode Island.

4822-7952-3288.3

The central issue raised in this motion to dismiss is the untimeliness of Jane's claims against Portsmouth Abbey, which she filed on December 1, 2020 - six years and two months after her causes of action legally accrued when she turned age 18 in October 2014.   As Jane acknowledges in her Amended Complaint, her claims against Portsmouth Abbey had to be brought by October 2017, before the expiration of the controlling three-year limitations period under R.I. Gen. Laws § 9-1-14(b) (applicable to claims for personal injuries).   Jane filed this lawsuit over three years too late.

Seeking to avoid the dispositive consequences of her belated filing of this lawsuit, Jane pleads her subjectively assumed theory that Portsmouth Abbey engaged in a "scheme" with a consultant and a law firm, which were retained in February 2017 when she approached her alma mater seeking its help because of Smith's harassment.   While the truth of Jane's allegations must be accepted for purposes of this motion, Portsmouth Abbey wishes to make clear that what Jane assumes about a purported "scheme" is untrue.   Even accepting the truth of what Jane has alleged, her pleading does not plausibly justify a "tolling" of the statute of limitations period, especially for the prolonged duration that Jane seeks in trying to transform her untimely lawsuit into a timely one.[1]

In its arguments below, Portsmouth Abbey provides a detailed analysis of the controlling three-year limitations period and shows why Jane did not timely file her lawsuit.  Further, several

---

[1]     Portsmouth Abbey disputes the truth of many of Jane's alleged facts, but states those facts as they appear in the First Amended Complaint because the Court must accept as true her plausible factual allegations for purposes of this motion to dismiss under Rule 12(b)(6).  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 62, 68 (1st Cir. 2014).  Portsmouth Abbey reserves the right, if necessary, to contest the truth of these allegations at an appropriate juncture of this litigation, if it survives dismissal in any part.

4822-7952-3288.3

of Jane's theories of liability against Portsmouth Abbey, which relate to the time period after her graduation in June 2014, seek to create duties of care that Rhode Island law has never recognized.

As shown below, Jane's claims are time-barred and also fail due to other dispositive flaws. This Court should grant this motion to dismiss and enter a final judgment in Portsmouth Abbey's favor as to all of Jane's claims pled against the school.

## II.     Background

### A.     Jane Attends High School at Portsmouth Abbey

Upon completing her eighth grade education, Jane and her parents decided that she would attend high school at Portsmouth Abbey.  ¶¶ 11-13.[2]  She attended Portsmouth Abbey as a residential student over four academic years, spanning from 2010-2011 through 2013-2014.  ¶¶ 13, 25, 30.  Jane enrolled at age 13 in the fall of 2010, and she graduated at age 17 in June 2014. ¶¶ 13, 30.  Jane alleges that, during her sophomore through senior years, Defendant Smith, a then-faculty member at Portsmouth Abbey, manipulated her into an inappropriate teacher-student relationship and sexually abused her.  ¶¶ 16-25.

### B.     Jane's Freshman Collegiate Year

Following her June 2014 graduation from Portsmouth Abbey, Jane enrolled in an east coast college in the fall of 2014.  ¶ 31.  In October 2014, Jane turned age 18.  ¶ 61.  When Jane reached adulthood, any cause of action that she had against Portsmouth Abbey accrued and the applicable limitation periods began to run.  *Id.*; *see* R.I. Gen. Laws § 9-1-19 (tolling accrual date of a minor's claims until he or she reaches age 18), addressed *infra*.

---

[2]     References to "¶ _" are to paragraphs of the First Amended Complaint.

During Jane's freshman collegiate year, in the spring of 2015, Jane "gained insight and clarity into what Smith had done to her." ¶ 30.[3]  At that time, she suffered from emotional issues, withdrew from college, and revealed Smith's sexual abuse to her parents.  *Id.*

### C.   Jane's Parents Contact Portsmouth Abbey in the Spring of 2015 to Report Jane's Allegations, and Smith Immediately Resigns His Employment

In the spring of 2015, Jane and her parents reported Smith's misconduct to Portsmouth Abbey, stating that sexual acts had occurred and providing copies of emails that Smith had sent to Jane.  ¶ 32.  Upon the reporting of Jane's allegations against him, Smith immediately resigned from Portsmouth Abbey.  ¶¶ 8, 33.  Jane alleges that Portsmouth Abbey failed to report the information about Smith's alleged misconduct to law enforcement.  ¶ 34.[4]

### D.   The Time Period Between the Spring of 2015 and February 2017

After resigning his employment at Portsmouth Abbey, Smith relocated to upstate New York.  ¶ 35.  Jane alleges that Smith tracked her online, cyberstalked her, and sent her strange emails from the spring of 2015 through February 2017.  ¶¶ 37-39.

### E.   Jane Contacts Portsmouth Abbey in February 2017

In February 2017, Jane (age 20 at the time) contacted Portsmouth Abbey requesting her high school alma mater's assistance regarding Smith's continuing harassment.  ¶ 39.  In response to Jane's request, Portsmouth Abbey referred its alumna to a consultant, Kathleen McChesney ("McChesney") of Kinsale Management Consulting.  ¶ 41.  Jane alleges that "[a]ll Portsmouth Abbey did was direct [Jane] to 'use McChesney's services' " and told her that the school would

---

[3]   Jane pleads no allegations that, after her graduation from Portsmouth Abbey, Smith engaged in any misconduct against her during the course of his employment.  Further, Jane does not plead that she has ever been on Portsmouth Abbey's campus since her June 2014 graduation.

[4]   While Portsmouth Abbey must accept the truth of this allegation in this motion to dismiss, it is an untrue allegation.  As Jane and her parents knew as of the spring of 2015, Portsmouth Abbey promptly reported her allegations to law enforcement.

4

pay for the consultant's services.  ¶¶ 43-44.  Jane alleges that McChesney has maintained professional relationships with the Catholic Church in her consulting work.  ¶ 41.

McChesney instructed Jane to write a note to Smith demanding that he "leave me alone," which McChesney arranged to have hand-delivered to Smith (apparently in New York).  ¶ 42. Jane alleges that McChesney never advised her that she had a potential civil lawsuit against Portsmouth Abbey, nor told or explained to Jane what a statute of limitations means in the context of bringing a lawsuit.  ¶ 45.  Jane does not allege that McChesney is an attorney or that any attorney-client relationship ever formed between them.  In February 2017, McChesney referred Jane, a New Mexico resident, to a New Mexico law firm, Lewis Roca Rothgerber Christie ("Lewis Roca").  ¶ 46.

### F.    The Attorney-Client Relationship Between Lewis Roca and Jane (February 2017-November 2017)

In February 2017, a Lewis Roca partner assured Jane that he and his law firm could help her, and Jane retained the law firm as her counsel.  ¶¶ 52, 54.  Portsmouth Abbey agreed to pay for Jane's legal fees incurred in Lewis Roca's representation.  ¶ 56.

Lewis Roca advised Jane that the firm would seek a temporary restraining order against Smith and allegedly characterized her case as one involving "domestic violence."  ¶ 55.  Jane contends that the Lewis Roca firm committed legal malpractice and breached fiduciary duties during its representation of her between February 2017 and November 2017.  ¶¶ 47, 55-58, 61. Specifically, Jane contends that she was unaware of Lewis Roca's representation of the Catholic Church (through its Dioceses), which the firm did not disclose to her.  ¶ 47.  Jane also claims that the law firm never sought a temporary restraining order against Smith.  ¶ 61.

Jane also alleges that Lewis Roca never advised her of the possibility that she could file a lawsuit against Portsmouth Abbey relating to Smith's sexual abuse during her high school years. ¶ 58.  She contends that the law firm failed to inform her that the three-year limitations period under Rhode Island law (§ 9-1-14(b)) to file a lawsuit against Portsmouth Abbey would expire upon her twenty-first birthday in October 2017.  ¶ 60.

In sum, Jane alleges that Lewis Roca's legal representation of her sought to protect the interests of the Catholic Church.  In merely generalized allegations (without any factual support), Jane assumes subjectively that Portsmouth Abbey, McChesney and Lewis Roca "engaged in a scheme designed to prevent Plaintiff from timely prosecuting her claims against the School."  ¶¶ 40, 61.  Lewis Roca represented Jane until November 2017, when it closed its file.  ¶ 61.

### G.    Jane Takes No Action Until December 1, 2020, When She Files This Litigation

Jane alleges that Smith has harassed her since November 2017.  ¶ 62.  Yet, Jane did not file this lawsuit until December 1, 2020.  Regarding the time period post-dating November 2017, Jane's Amended Complaint is devoid of any allegations about her actions to investigate or pursue any of her claims.[5]  Concerning the over three-years between November 2017 and the filing of this lawsuit, Jane has not plead any allegations suggesting or even implying that Portsmouth Abbey

---

[5]    Sometime after she withdrew from an east coast college in the spring of 2015, Jane returned to her collegiate studies.  In paragraph 62 of the Amended Complaint, Jane alleges that Smith "went so far to figure out where Plaintiff was attending college in 2020."  Jane does not state when she resumed her collegiate education or whether she has graduated.  If Jane delayed her filing of this lawsuit to concentrate on her collegiate studies, that was her personal choice for which she must bear the legal consequences in the limitations period analysis.  It would not justify any tolling or extension of the limitations period to Portsmouth Abbey's detriment.

ever took any action, made any statement, or did anything whatsoever, which in any way dissuaded or prevented her from filing this lawsuit much earlier than she eventually did.[6]

### H.   Jane Acknowledges that her Claims Against Portsmouth Abbey are Time-Barred, Unless the Limitations Period is Tolled

As Jane pleads, any cause of action that she had against Portsmouth Abbey accrued upon her eighteen birthday in October 2014, starting the three-year limitations period to file suit.  ¶¶ 60-61.  Jane did not file this suit until over six years after the October 2014 accrual date.  Now, at age 24, Jane seeks to litigate claims against Portsmouth Abbey pertaining to alleged events over six-and-a-half years ago, pre-dating her June 2014 graduation from high school and extending back to a decade ago to academic year 2010-2011.  Jane seeks that the Court should excuse her time-barred filing based upon "the doctrine of estoppel" and other "similar," but unspecified, doctrines.  ¶ 61.

As argued below, Jane's claims against Portsmouth Abbey are long time-barred, compelling their dismissal for their failure to plead any plausible cause of action upon which any relief may be granted.   The Court should frame its limitations analysis under the following reference points on the timeline:

| October 2014: | December 1, 2020: |
|---|---|
| **Jane turns age 18** | **Jane files this lawsuit** |

| **February 2017 - November 2017:** |
|---|
| **Attorney-Client Relationship Between Jane and Lewis Roca** |

---

[6]   Also, on December 1, 2020, Jane sued Lewis Roca in New Mexico state court.  The defendant law firm removed the action to the United States District Court for the District of New Mexico.  *See Jane Doe v. Lewis Rothgerber Christie LLP*, 1:20-cv-01365-SMV-LF (D.N.M.).

### III.    Standard of Review

The Court must answer "whether-taking the facts pled in the Complaint as true and making all reasonable inferences in favor of the plaintiff - [she] has stated a claim that is 'plausible on its face' " *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 185 (D.R.I. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In doing so, the Court must "differentiate between the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)", and then "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal citations and quotations marks omitted).

Additionally, "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the pleadings."  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (alteration in original) (citation and internal quotation marks omitted).  That is, "the pleader's allegations leave no doubt that an asserted claim is time-barred."  *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998).  "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate."  *Trans-Spec Truck Serv., Inc.*, 524 F.3d at 320 (citation and internal quotation marks omitted).  Under Rhode law, whether a statute of limitations has run against a plaintiff's claim is a legal question for the Court's determination.  *Polanco v. Lombardi*, 231 A.3d 139, 144 (R.I. 2020) (citing *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 460 (R.I. 2016)).

4822-7952-3288.3

IV.     **Argument**

    A.     **Jane's Claims Against Portsmouth Abbey are Time-Barred.**

        1.     **The Three-Year Limitations Period Under R.I. Gen. Laws § 9-1-14(b) and an October 2014 Accrual Date Under R.I. Gen. Laws § 9-1-19 Apply to Jane's Claims Against Portsmouth Abbey.**

            a.     **Section 9-1-14(b) Prescribes the Controlling Three-Year Limitations Period.**

Statutes of limitation serve important societal purposes.  *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 180 (R.I. 2008).  As the United States Supreme Court and the Rhode Island Supreme Court have expressed:

> "Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence.  They promote repose by giving security and stability to human affairs.  An important public policy lies at their foundation.  They stimulate to activity and punish negligence.  While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary.  Mere delay, extending to the limit prescribed, is itself a conclusive bar."

*Id*. at 180-81 (quoting *Wood v. Carpenter*, 101 U.S. 135, 139 (1879)).  "Statutes of limitation 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " *Id*. (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)).  Statutes of limitation "are the product of a balancing of the individual's right to seek redress for past grievances against the need of society and the judicial system for finality – for a closing of the books." *Id*.

In her Amended Complaint, Jane seeks to hold Portsmouth Abbey liable because of Smith's sexual misconduct against her as a high school student between academic years 2010-2011 and 2013-2014.  She has pled four claims for relief against Portsmouth Abbey: one claim alleging intentional infliction of emotional distress (First Claim); two claims based upon

9

negligence theories (Third Claim, Fifth Claim), and a claim that the school breached a mandatory reporting duty under R.I. Gen. Laws § 40-11-3 (Fourth Claim).[7]  Regardless of how they are pled and titled, all of Jane's claims against Portsmouth Abbey entail actions for personal injury.  In fact, she has captioned her pleading as a "First Amended Complaint for Personal Injuries and Damages Arising from Childhood Sexual Abuse."

Prior to 1992, the statute of limitations set forth in § 9-1-14(b) applied to all claims of personal injuries caused by childhood sexual abuse.  Section 9-1-14(b) states:

> Actions for injuries to the person shall be commenced and sued within three (3) years after the cause of action shall accrue . . . .

In 1992, the General Assembly enacted R.I. Gen. Laws § 9-1-51, which enlarged the statute of limitations period for claims against perpetrators of childhood sexual abuse.  Through § 9-1-51, the General Assembly enacted a discovery rule regarding limitation of actions on crimes of childhood sexual abuse, permitting claims against the perpetrator to be brought up to seven years after the victim discovers or reasonably should have discovered that the abuse occurred.  Following the legislative enactment of § 9-1-51, the Rhode Island Supreme Court held twice that the statute's extended limitations period did not apply to a nonperpetrator-defendant.  *Kelly v. Marcantonio*, 678 A.2d 873, 877 (R.I. 1996) ("§ 9-1-51 has no application to claims against nonperpetrator-defendants.  Regarding nonperpetrator-defendants, the three-year statute of limitation provided in § 9-1-14(b) applies, subject, of course, to the tolling provision of § 9-1-19, . . . ."); *Ryan*, 941 A.2d at 183 (same) (citing *Kelly*).

In 2019, the General Assembly amended § 9-1-51 to apply to nonperpetrator-defendants. As amended, § 9-1-51 now allows a cause of action against a perpetrator or a nonperpetrator-

---

[7]  Jane's Fourth Claim appears to be pled as a claim for personal injuries under R.I. Gen. Laws § 40-11-6.1.

4822-7952-3288.3

defendant within the longer of thirty-five (35) years of the act or acts alleged to have caused the injury or seven (7) years from the victim's reasonable discovery of the injury. § 9-1-51(a)(1-2). This amended limitations period, however, does not apply to Jane's lawsuit against Portsmouth Abbey because her three-year limitations period under § 9-1-14(b) to bring her personal injury claims had already expired in October 2017, before the General Assembly's 2019 amendment of § 9-1-51. § 9-1-51(a)(4) (the amended limitation period may not be applied retroactively to time-barred claims against a nonperpetrator-defendant).

Correctly, Jane does not plead that § 9-1-51 applies to her causes of action against Portsmouth Abbey. Without expressly citing to § 9-1-14(b), Jane acknowledges that her claims are subject to a three-year limitations period. To be clear, § 9-1-14(b) is the controlling limitations statute regarding Jane's claims for personal injuries pled against Portsmouth Abbey.

### b. Jane's Causes of Action Accrued in October 2014.

"[A] cause of action accrues and the statute of limitations begins to run at the time of the injury to the party." *Polanco*, 231 A.3d at 139 (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 600 (R.I. 2019) (internal quotation marks omitted)). "[M]ere ignorance of the facts which constitute the cause of action will not postpone the operation of the statute of limitations, but the statute will run from the time the cause of action first accrues notwithstanding such ignorance." *Id*. (quoting *Astle v. Card*, 52 R.I. 357, 361, 161 A.2d 126, 128 (1932)).

A cause of action for damages arising from sexual abuse accrues at the time of injury, i.e., the sexual abuse. *Kelly v. Marcantonio*, 678 A.2d at 877; *Kelly v. Marcantonio*, 187 F.3d 192, 195 (1st Cir. 1999) ("Under § 9-1-14(b), a cause of action for childhood sexual abuse accrues on the date of the injury"). This is true regardless of under what name the cause of action may be

brought, such as fraud, negligent supervision, respondeat superior or the like. *Martin v. Howard*, 784 A.2d 291, 302 (R.I. 2001) (claims for bad faith, fraud and violation of fiduciary duty accrue with the sexual abuse); *Kelly*, 187 F.3d at 195 (claims based upon misrepresentation by the church and the church's negligent supervision accrue with the sexual abuse). *See also Polanco,* 231 A.3d at 145 (quoting *Hill v. R.I. State Employees' Ret. Bd.*, 935 A.2d 608, 617 (R.I. 2007)) ("It is not the degree of suffering that is controlling, but rather when the actionable injury arose").

Because Jane was a minor at the time of Smith's alleged sexual abuse (between her sophomore and senior years of high school), R.I. Gen. Laws § 9-1-19 sets the starting of her three-year limitations period under § 9-1-14(b):

> *If any person at the time any such cause of action may accrue to him or her shall be under the age of eighteen (18) years*, or of unsound mind, or beyond the limits of the United States, the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed.

§ 9-1-19 (italics added).

Under §§ 9-1-14(b) and 9-1-19, Jane's causes of action for personal injuries accrued upon her eighteenth birthday in October 2014, the three-year limitations period began to run at that time, and the limitations period expired on Jane's twenty-first birthday in October 2017.[8]  After Jane turned age 21, she could no longer bring a timely claim for personal injuries against Portsmouth Abbey.

---

[8]   While Jane alleges that she "gained insight and clarity into what Smith had done to her" in the spring of 2015 (¶ 30), she has pled no facts to suggest that she was of "unsound mind" between October 2014 and the spring of 2015 to apply § 9-1-19 to start the three-year limitations period as of the spring of 2015.  *See Hyde*, 139 A.3d at 463 ("for purposes of § 9-1-19, 'unsound mind' mean[s] 'the inability to manage one's day-to-day affairs.' ") (quoting *Roe v. Gelineau*, 794 A.2d 476, 486 (R.I. 2002)).

       2.       **There is No Plausible Basis to Toll Jane's Limitation Period to Enable her to Have Timely Sued Portsmouth Abbey on December 1, 2020**.

Acknowledging that § 9-1-14(b) required her to sue Portsmouth Abbey by her twenty-first birthday in October 2017, Jane requests the Court to justify and accept her very belated filing of this lawsuit (three years and two months after the October 2017 deadline) based upon "[t]he doctrine of estoppel," and "other similar" (but unspecified) doctrines.  ¶ 61.  Jane bears the burden of establishing a valid theory to toll the running of § 9-1-14(b)'s three-year limitations period, especially for the prolonged tolled time period that she seeks.  *Ryan*, 941 A.2d at 181 (citations omitted).

To start, Portsmouth Abbey addresses what, at most, that tolling would afford Jane.  As of February 2017, when Jane contacted Portsmouth Abbey, two years and four months had already lapsed in her three-year limitations period under § 9-1-14(b) (starting from its October 2014 accrual date).  Jane does not get to reset where the limitations clock stood in February 2017 and turn back its time to any extent.  *Artis v. District of Columbia*, 138 S. Ct. 594, 601-02 (2018) ("Ordinarily, 'tolled' in the context of a time prescription . . . means that the limitations period is suspended (stops running) . . ., then starts running again when the tolling period ends, picking up where it left off.") (citing *Black's Law Dictionary* 1488 (6th ed. 1990) (definition of "toll")); *United States v. Ibarra*, 502 U.S. 1, 4, n.2 (1991) (*per curium*) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then resumes to run again upon a later date, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.").

Consequently, in the limitations period analysis, the two questions before the Court concern: (1) has Jane pled a plausible theory to support the tolling of § 9-1-14(b)'s remaining time (eight months) as of February 2017? and (2) if so, has Jane plausibly alleged that such tolling

should equitably continue for a prolonged duration to enable her to eventually file this lawsuit against Portsmouth Abbey on December 1, 2020?  Specifically, because Jane had only eight months remaining, as of February 2017, to file suit under § 9-1-14(b)'s limitations period, she bears the burden to plead plausible reasons supporting the tolling of the limitations period continuously through at least April 1, 2020 in order to render her December 1, 2020 lawsuit timely filed.  For the reasons argued below, Jane has not done so and has not timely sued Portsmouth Abbey.

**a.    There are no Equitable Grounds to Toll the Limitations Period, Especially to the Length Sought By Jane.**

Jane pleads that her late filing of this lawsuit on December 1, 2020, over six years after her cause of action accrued in October 2014, should be excused under the "doctrine of estoppel." ¶ 62.  She apparently seeks to invoke "equitable tolling."  The Rhode Island Supreme Court has not authorized the application of "equitable tolling" to claims against nonperpetrator-defendants in child sexual abuse cases.[9]

Equitable tolling is available " 'in exceptional circumstances' to extend the statute of limitations."  *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 71 (1st Cir. 2005) (quoting *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004)).  "It is a 'sparingly invoked doctrine' that is 'used to excuse a party's failure to take action in a timely manner, where such failure was

---

[9]    The Rhode Island Supreme Court has noted that courts have used the terms "equitable estoppel" and "equitable tolling" interchangeably.  *Rivera v. Employees' Retirement System*, 70 A.3d 905, 913 n. 11 (R.I. 2013) ("If the two concepts are not siblings, they are at least first cousins.").  *See, e.g.*, *Wolf v. Whitman Co.*, 92 R.I. 470, 169 A.2d 903, 905 (R.I. 1961) (using the term "equitable estoppel" to describe the tolling of the state of limitations for equitable purposes).  "In Rhode Island, the running of the limitations period may be stopped when a defendant has given 'express representation or other affirmative conduct amounting in fact to such a representation which could reasonably deceive another to induce him to rely thereon to his disadvantage."  *Id*. (quoting *Cainello v. Shatkin*, 78 R.I. 471, 82 A.2d 826, 829 (R.I. 1951)) (using the term "equitable estoppel" in a tolling analysis).

14

caused by circumstances that are out of his hands.' " *Ortega Candelaria v. Orthobiologic LLC*, 661 F.3d 675, 679 (1st Cir. 2011) (quoting *Dawood v. Holder*, 561 F.3d 31, 36 (1st Cir. 2009)).

The Rhode Island Supreme Court has made clear that equitable tolling applies only in "unusual or extraordinary circumstances." *Polanco*, 231 A.3d at 155-56. Analyzing the doctrine, the Court quoted *Black's Law Dictionary's* definition of "equitable tolling," which states in pertinent part as follows:

> The doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired, in which case the statute is suspended or tolled until the plaintiff discovers the injury[;] [a] court's discretionary extension of a legal deadline as a result of extraordinary circumstances prevented one from complying despite reasonable diligence throughout the period before the deadline passed. *Black's Law Dictionary* 680 (11th ed. 2019).

*Id*. at 155. "Thus, it is clear that a prerequisite to this Court's extension of the statute of limitations based on equitable tolling is either a plaintiff who was not able to discover his or her injury despite diligent efforts or extraordinary circumstances that prevented a plaintiff from complying with the deadline, despite using reasonable diligence." *Id*. at 155-56.

Applying this framework, Jane's assertion of equitable tolling is implausible, especially to the prolonged extent that she seeks here to try to make her claims timely pled. She acknowledges that her causes of action against Portsmouth Abbey accrued upon her eighteenth birthday in October 2014. Two years and four months of the three-year limitation period had passed when she approached Portsmouth Abbey in February 2017. That time period counts in the limitation periods analysis. When she approached Portsmouth Abbey, she was fully aware of the nature of her injuries caused by Smith's misconduct. Even accepting the truth of Jane's allegations that Portsmouth Abbey engaged in a "scheme" between February 2017 and November 2017 to prevent her from suing within the eight months that remained in the limitations period (by October 2017), she has

4822-7952-3288.3

offered nothing to explain why she then waited another three years and one month to sue Portsmouth Abbey.  To show the extremes of Jane's contentions, assume, *arguendo*, that Jane is entitled to the complete restarting of § 9-1-14(b)'s three-year limitations period in November 2017 when her attorney-client relationship ended with the Lewis Roca firm, she still did not timely bring her claims against Portsmouth Abbey because she then waited over three years thereafter to file this suit on December 1, 2020.  Equity cannot be stretched to the implausible extreme sought by Jane's tolling argument.

        **b.**      **Prior to the General Assembly's 2019 Amendment to § 9-1-51, Rhode Island Law did not Recognize the Application of the "Discovery Rule" in Civil Lawsuits Against Nonperpetrator-Defendants.**

In addition to her express claim that the three-year limitations period should be tolled by "the doctrine of estoppel," Jane alludes to other "similar," unspecified doctrines that purportedly justify tolling.  Portsmouth Abbey assumes that Jane may be alluding to the "discovery rule," which provides an exception to the normal statute of limitations in "narrowly circumscribed factual situations."  *Renaud v. Sigma-Aldrich Corp.*, 662 A.2d 711, 714 (R.I. 1995).

The discovery rule is meant to "protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for a particular claim."  *Hyde*, 139 A.3d at 461 (quoting *Sharkey v. Prescott*, 19 A.3d 62, 66 (R.I. 2011)).  Courts have applied the discovery rule only where it would "be manifestly unjust to bar enforcement of injury of claims brought by a plaintiff who was not, nor could have known that she was, the victim of tortious conduct <u>because the consequent harm was unknowable within two</u> [now three] <u>years of the negligent act</u>."  *Von Villas v. Williams*, 117 R.I. 309, 314, 366 A.2d 545, 549 (1979) (emphasis added); *see also Kelly*, 192 F.3d at 201 ("Once injured, a plaintiff is under an affirmative duty to investigate all of [her] claims.").

16

Of course, the question is what needed to be discovered.  The discovery rule asks whether the plaintiff, through the exercise of reasonable diligence would have discovered her injury or the breach that would result in the claim.  The harm that ensued to Jane was the alleged sexual abuse by Smith during her sophomore through senior high school years, which she acknowledges that she was aware of and understood by no later than the spring of 2015 and led her and her parents to report her allegations to Portsmouth Abbey.  ¶¶ 31-32.  *See Canavan v. Lovett, Scheffrin and Harnett*, 862 A.2d 778, 783-84 (R.I. 2004) ("Under the discovery rule, it is not necessary for the plaintiff to fully appreciate the potential liability, or even be convinced of an injury, the objective standard requires only that the plaintiff be aware of the facts that would place a reasonable person on notice that a potential claim exists.").  That means if a plaintiff knows she has an injury or is aware of a possible breach of a duty, then her duty to investigate is triggered and the three-year clock begins to run.  At most, the discovery rule would only toll the accrual of Jane's claims and the starting of the limitations clock to the spring of 2015, instead of upon her twenty-first birthday in October 2014.  Even if such tolling applied to start Jane's three-year limitations clock, Jane's claims against Portsmouth Abbey were still long time-barred when filed on December 1, 2020. *See Kelly*, 187 F.3d at 201 ("[A]s soon as plaintiff-appellants became aware of the alleged abuse, they should also have been aware that the hierarchy defendants, as the priests' 'employers' were potentially liable for the abuse.").[10]

Most important, as noted above, in 1992, the General Assembly enacted § 9-1-51 to create a discovery rule regarding the limitations period applicable to claims against perpetrators of child

---

[10]   As stated above, Portsmouth Abbey disputes that the accrual date could be pushed back to the spring of 2015 (rather than Jane's twenty-first birthday in October 2014) because she has pled no facts suggesting that she was disabled by an "unsound mind" to allow for such tolling under § 9-1-19.

17

sexual abuse. The General Assembly did not legislatively impose the discovery rule to claims against nonperpetrator-defendants until its 2019 amendment of § 9-1-51, which, as stated above and acknowledged by Jane, does not apply to her claims against Portsmouth Abbey.

Regarding claims against nonperpetrator-defendants subject to § 9-1-14(b)'s three-year limitations period, which is the case here, the Rhode Island Supreme Court twice held prior to the 2019 legislative amendment to § 9-1-51 that the discovery rule does not apply to the statute of limitations analysis. In *Kelly*, the Court held that if a plaintiff seeks to toll the running of § 9-1-14(b) in a sexual abuse action asserted against a nonperpetrator-defendant, he or she must do so only under § 9-1-19 (allowing for tolling due the disability of being a minor or having an unsound mind). 678 A.2d at 878; *see also id.* ("We acknowledge that the General Assembly has considered the right of a nonperpetrator-defendant to be free of stale claims to be as great as the right of a plaintiff to prosecute childhood sexual assault, and we decline to judicially upset that balance set by the General Assembly"). In *Ryan*, the Court reiterated that the discovery rule has no application to claims made against nonperpetrator-defendants to toll § 9-1-14(b)'s three year limitations period. 941 A.2d at 174. *See also Kelly*, 187 F.3d at 201 ("[T]he Rhode Island Supreme Court has expressly rejected the extension of the discovery rule to claims against nonperpetrator-defendants for damages arising from childhood sexual abuse . . . . We therefore decline plaintiffs-appellants' request."). Consequently, the "discovery rule" does not save Jane's untimely pled claims against Portsmouth Abbey, which are time-barred by § 9-1-14(b)'s three-year limitations period and not tolled by § 9-1-19 to save their untimeliness.

> **c. The Statute of Limitations was not Tolled by Operation of R.I. Gen Laws § 9-1-20.**

As another of her alluded-to, but unspecified, grounds for tolling, Jane may be claiming

4822-7952-3288.3

that R.I. Gen. Laws § 9-1-20 impacts the case.  The statute states:

> If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue upon the person so liable at the time when the person entitled to sue thereon shall first discover its existence.

§ 9-1-20.  The Rhode Island Supreme Court has addressed this statute on multiple occasions.

Particularly, the Court analyzed the statute in cases involving claims of child sexual abuse in *Ryan*,

and then in *Hyde*.  The Court strictly construed the statute and placed a heavy burden on a plaintiff

seeking to invoke § 9-1-20 to extend the statute of limitations.

> In order to demonstrate that there has been fraudulent concealment on the part of a defendant, a plaintiff must show: (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of [the] plaintiffs' causes of action. *Ryan*, 941 A.2d at 182.  Therefore, to find a safe harbor based on fraudulent-concealment tolling, plaintiffs "must demonstrate that the defendant made 'an express representation or [engaged in] other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him [or her] to rely thereon to his [or her] disadvantage.  *Id*. at 182-83.

*Hyde*, 139 A.3d at 465-66.   Regarding the required showing of an actual misrepresentation, the

Court quoted in *Hyde* its earlier holding in *Ryan* that "mere silence or inaction on the part of the

defendant does not constitute actual misrepresentation in this context."  *Id*. at 466 (quoting *Ryan*,

941 A.2d at 1982).  The Court further stated that "[t]hus, it is not enough that the defendant failed

to disclose the facts of the plaintiff's injury to them."  *Id*.

The Rhode Island Supreme Court's holdings in *Hyde* and *Ryan* were consistent with this

Court's earlier analysis of a § 9-1-20 claim of fraudulent concealment:

> Mere silence of a failure to volunteer information does not constitute actual misrepresentation.  *Kenyon* [*v. United Elec. Ry. Co*., 51 R.I. 90, 151 A. 5, 8 (1930)]. What is required is "some express representation or other affirmative conduct amounting in fact to such a representation which could reasonably induce another and induce him to rely thereon to his disadvantage.  *Canianiello v. Shatkin*, 78 R.I. 471, 82 A.2d 826, 829 (R.I. 1951)."

*Smith v. O'Connell*, 997 F. Supp. 226, 238 (D.R.I. 1998), *aff'd sub. nom by Kelly v. Marcantonio*, *supra*.

Regarding any express statement that Jane attributes to Portsmouth Abbey, she has pled only that, in February 2017, her alma mater "steered" her to McChesney's consulting services, when she sought its help to alleviate Smith's continuing harassment.  ¶¶ 40-41.  What is missing from Jane's allegations is the most vital representation required to support tolling under § 9-1-20. Jane has not pled any allegations that any of Portsmouth Abbey's statements or conduct (at any time between February 2017 and November 2017) could plausibly have "mislead [Jane] into believing that the sexual assault did not occur." *Hyde*, 139 A.3d at 466 (quoting *Ryan*, 941 A.2d at 183).  Jane herself acknowledges that at least two years earlier, by no later than the spring of 2015, "she gained insight and clarity into what Smith had done to her – how he manipulated her, abused her, took advantage of her, and turned her against her friends and her family" and that "she revealed the sexual abuse to her parents at this time."  Nothing that Jane has pled plausibly suggests, in any way, that Portsmouth Abbey ever made any misrepresentations that led her to believe that Smith did not sexually abuse her or that her personal injuries did not occur. Consequently, Jane cannot toll §9-1-14(b)'s limitations period through § 9-1-20.

> **B.    There is no Plausible Claim Against Portsmouth Abbey Regarding the Post-Graduation Time Period Asserted in Jane's Amended Complaint.**

In addition to the above-stated arguments that all of Jane's claims are time barred, several of her claims are implausible and not supported by Rhode Island statutory or case law.  Particularly, Jane alleges that Portsmouth Abbey has owed her a legal duty of care since her June 2014 graduation that has continued to the present date, such that her alma mater should bear third-party legal responsibility for Smith's alleged continuing harassment of her.  In paragraph 70, she contends that "Portsmouth Abbey is liable for this ongoing misconduct and also had a duty to put

an end to it given that Smith formerly worked for them and his harassment of Plaintiff commenced while the two of them were at Portsmouth Abbey." In paragraph 92, she further contends that after her graduation, Portsmouth Abbey has maintained a "special relationship" with her, requiring it to address and stop Smith's continuing harassment.

Since June 2014, Jane has been an alumna of the school (who turned 18 years old in October 2014), attended an east coast college from the fall of 2014 into the spring of 2015, returned thereafter to her familial home state of New Mexico, and then reenrolled in college. Since the spring of 2015, Smith has been a former employee of Portsmouth Abbey, who relocated to New York. No Rhode Island statutory or judicially recognized law imposes any duty of care upon a school relating to a former employee's alleged harassment of an adult alumna (especially when both of them reside outside Rhode Island).

While the extent of any special relationship between Portsmouth Abbey and Jane during her enrollment as a minor high school student (between the fall of 2010 and June 2014) and the resulting duties of care would be litigated issues if this case survives dismissal, the Court should not create new Rhode Island law imposing third-party liability upon Portsmouth Abbey for Smith's conduct post-dating Jane's graduation and particularly post-dating his employment. *Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) ("Federal courts are not free to extend the reach of state law") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). *Cf. Doe v. Brown Univ.*, 304 F. Supp. 3d 252, 261-62 (D.R.I. 2018) (declining to recognize a special relationship under Rhode Island law between a university and a student because any change in the area of third-party liability must come from the Rhode Island legislature).

Further, regarding Jane's outreach to Portsmouth Abbey in February 2017 requesting her alma mater's assistance, Portsmouth Abbey helped an alumna in need. Even assuming the truth

21

of Jane's assumption that Portsmouth Abbey concocted a "scheme" with McChesney and Lewis Roca, which began in February 2017 and continued through November 2017, any claim against Portsmouth Abbey concerning such alleged conduct during this period is similarly time-barred under § 9-1-14(b)'s three year limitations period.  Jane had to file suit asserting any claims relating to the alleged "scheme" by a November 2020 deadline, and she did not do so.

## V.    Conclusion

For the reasons discussed above, the Court should dismiss Jane's claims pled against Portsmouth Abbey in her First Amended Complaint.  The Court should enter a Final Judgment in Portsmouth Abbey's favor.

## REQUEST FOR HEARING

Pursuant to Local Rule Civil 7(c), Portsmouth Abbey requests that the Court conduct a hearing on its Motion to Dismiss, and estimates that the hearing will take up to one hour.

Defendant,

Order of St. Benedict in
Portsmouth, Rhode Island

By Its Attorney,

/s/ Steven M. Richard
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020
Fax: 401-454-1030
Email: srichard@nixonpeabody.com
Dated:  January 22, 2021

4822-7952-3288.3

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on the 22nd day of January, 2021, this Motion to Dismiss was filed and served upon counsel of record via the Court's CM/ECF system.

/s/ Steven M. Richard

23