David M. Ring (*Pro Hac Vice*)
Neil K. Gehlawat (*Pro Hac Vice*)
**TAYLOR & RING**
1230 Rosecrans Avenue, Suite 360
Manhattan Beach, California 90266
Phone: (310) 209-4100
Email: ring@taylorring.com
Email: gehlawat@taylorring.com

Timothy J. Conlon
**BURNS & LEVINSON**
One Citizens Plaza, Suite 1100
Providence, Rhode Island 02903
Phone: (401) 831-8370
Email: tconlon@burnslev.com

**Attorneys for Plaintiff JANE DOE**

## UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

JANE DOE, an individual;

               Plaintiff,

vs.

ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND, a religious entity; MICHAEL BOWEN SMITH, an individual; and DOES 1-60, inclusive;

               Defendants.

CASE NO. 1:20-cv-500

**PLAINTIFF'S OPPOSITION TO DEFENDANT ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND'S MOTION TO DISMISS**

## I.   INTRODUCTION

Defendant Order of St. Benedict in Portsmouth, Rhode Island (hereinafter referred to as "Defendant" or "Portsmouth Abbey") seeks to avoid any liability for the rampant sexual molestation and abuse of Plaintiff Jane Doe, a prior student, by a former faculty member, Michael Bowen Smith ("Smith"). According to Defendant, Plaintiff waited too long to initiate the action and as such, the

statute of limitations bars any recovery against Portsmouth Abbey as a matter of law.  Defendant is mistaken.  As now explained, such a defense has no place in this action where it was precisely because of actions undertaken by Defendant that lulled Plaintiff into not filing a timely civil action.  While Defendant argues that it was only trying to "help" a former student, by hiring a law firm that primarily defends religious institutions in claims arising out of sexual abuse of children to thwart the filing of any civil action against Defendant until *after* the statute of limitations had run, the allegations paint a much darker picture.

As poignantly highlighted by the dissent in *Kelly v. Marcantonio*, more than twenty years ago and at a time when Rhode Island failed to recognize application of delayed discovery to non-perpetrator defendants in its statute of limitations (which has since been amended): "'Pedophiles are notoriously difficult to deter. The institutions that employ them, however, *are highly sensitive to questions of legal liability*. **These institutions are likely to do *whatever will minimize their liability and insure their institutional survival***.'" *Kelly v. Marcantonio*, 678 A.2d 873, 885 (R.I. 1996) [dissent, emphasis added]. Such abhorrent tactics are precisely what has been alleged here.

Defendant cannot now take advantage of its own wrong to argue that Plaintiff's action is untimely.  For several reasons, the motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

During the 2011-2012 school year, when Plaintiff Jane Doe was just 14 years old, and a sophomore student at Portsmouth Abbey, a prestigious Catholic Boarding school, her humanities teacher, Smith, began grooming her for sexual abuse and exploitation.  Dkt. 11 [First Amended Complaint], at ¶¶ 17-21.  By Spring 2012, Smith began engaging in sexual activity with Plaintiff, who was only 15 years old at the time. ¶ 21.  Smith was in his mid-to-late 40s. ¶ 8.  The sexual abuse continued and escalated throughout her junior and senior years as a student at Portsmouth Abbey.  ¶¶ 21-30.  Despite repeated signs of sexual abuse and inappropriate conduct between Smith and Plaintiff, Defendant did nothing to intervene, nor protect Plaintiff from foreseeable sexual abuse by her teacher. ¶¶ 26-29.

Smith continued to harass Plaintiff even after she graduated and it was not until the Spring of her freshman year of college, in 2015, that she first began to appreciate that Smith's relationship was in fact

manipulated sexual abuse.  ¶¶ 30-31.  At that time, Plaintiff told her family and they immediately contacted Portsmouth Abbey to report the sexual abuse. ¶¶ 31-32.  Rather than conduct an investigation into the alleged abuse, Portsmouth Abbey simply allowed Smith to quietly resign.  ¶ 33.  As alleged, Smith went on to teach at another Catholic school in upstate New York.  ¶ 35.

Even after his resignation from Portsmouth Abbey, Smith's harassment of Plaintiff continued.  ¶¶ 37-38.  From 2015 through 2017, Smith repeatedly tracked Plaintiff down and cyberstalked her.  ¶¶ 37-38.  Terrified of Smith, Plaintiff reached out to Portsmouth Abbey for help in February 2017.  She was only 20 years old at the time. ¶ 39.  Aware that Plaintiff's civil action against it for its complete negligence in failing to protect her from the known or suspected of abuse of Smith while she was a student at Portsmouth Abbey, *had not yet expired*, Defendants commenced a scheme to lull Plaintiff into losing her right to bring a civil lawsuit against the school. ¶¶ 40-62.

Defendant first hired a "consultant," Kathleen McChesney of Kinsale Management Consulting, who had long worked for the Catholic Church, to "help" Plaintiff with preparing a letter to Smith, essentially saying "leave me alone," which McChesney and her agents would deliver to Smith. ¶¶ 41-45. McChesney then referred Plaintiff to a New Mexico law firm, Lewis Roca Rothgerber Christie ("Lewis, Roca").  McChesney had a professional relationship of some sort with law partners at that law firm and had referred business to them in the past.  ¶ 46.  In a February 2017 email, McChesney told law partner Scott Browning (of the Lewis Roca firm), "I have a new client in Albuquerque who may be in need of representation with regard to being abused in a religious school."  ¶ 49.

Portsmouth Abbey arranged to pay the legal fees of Lewis Roca in their representation of Plaintiff concerning the sexual abuse and harassment by Smith. ¶¶ 54-56.  At no time did Portsmouth Abbey, McChesney nor anyone at Lewis Roca inform Plaintiff that the firm *routinely represented the Catholic Church*, that the firm had a long history of lobbying on behalf of the Catholic Church and against legislation designed to help victims of childhood sexual abuse, that the firm has defended and continues the defend the Catholic Church against claims brought by victims of sexual abuse, which is the exact claim Plaintiff had against Portsmouth Abbey, or that a potential conflict could exist given that Portsmouth Abbey paid for Plaintiff's lawyers' fees given that Plaintiff had a potential civil lawsuit against the School.  ¶ 57.  At no time did Lewis Roca ever advise Plaintiff, their client, of the running

3

statute of limitations on a claim against Portsmouth Abbey arising out of the sexual abuse despite being required to do so by law.  ¶ 54-59.

Lewis Roca represented Plaintiff from February 2017 through November 2017, *which was coincidentally one month after the then existing statute of limitations for claims against non-perpetrator defendants expired.*  ¶¶ 59-61.  As alleged, Lewis Roca "slow walked" Plaintiff's case, allowing the statute of limitations to run without ever initiating a claim against Portsmouth Abbey or even obtaining a Temporary Restraining Order against Smith.  ¶ 61.  As alleged, "Together, Portsmouth Abbey, McChesney, and Lewis, Roca engaged in a scheme designed to prevent Plaintiff from timely prosecuting her claims against the School. The doctrine of estoppel, and other similar doctrines, prevent Portsmouth Abbey and its agents from benefiting from this conduct." ¶ 61.

Smith continued with his harassment and cyberstalking of Plaintiff throughout 2020 and as of the time of filing the instant action.  ¶ 62.  Plaintiff continued to be terrified by Smith and his continued harassment of her.  ¶ 62.

### III.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure, provides for the dismissal of actions which "fail to state a claim upon which relief can be granted."   The facts of the complaint are accepted as true and construed in a light most favorable to the plaintiff. See *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987); *Theta Prod., Inc. v. Zippo Mfg. Co.,* 81 F. Supp. 2d 346, 348 (D.R.I. 1999). "We must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto,* 14 F.3d 697, 700 (1st Cir.1994).

"The question before the Court, therefore, is whether the Complaint, viewed in the light most favorable to [Plaintiff] and with all doubts resolved in her favor, states any valid claim for relief." *Hart v. Mazur,* 903 F.Supp. at 279; see also *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 570–71 (D.R.I. 1996) ["A claim need only show the faintest likelihood of validity to survive a Rule 12(b)(6) motion"]. With respect to a statute of limitations defense, the alleged timing defect must appear on the face of the complaint. *Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I.1991); *McDonald v. Rhode Island General Council,* 505 A.2d 1176, 1178 (R.I.1986). "This Court has cautioned that such a motion should

4

not be granted 'unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim.'" *St. James Condominium Association v. Lokey*, 676 A.2d 1343, 1346 (R.I.1996), citing *Bragg v. Warwick Shoppers World, Inc.,* 102 R.I. 8, 12, 227 A.2d 582, 584 (1967). "Dismissal ... is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir.1999); see also *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

## IV.   THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANT IS EQUITABLY ESTOPPED FROM ARGUING THAT PLAINTIFF'S COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

According to Defendant, Plaintiff's entire complaint should be dismissed as time-barred. Notably, while Defendant recognizes that Plaintiff specifically plead that "[t]he *doctrine of estoppel*, and other similar doctrines, prevent Portsmouth Abbey and its agents from benefiting" from its conduct to prevent Plaintiff from timely filing a claim against them (Dkt. 11, ¶ 61; see also ¶¶ 3, 81, 89, 97; Dkt. 18 at 13), Defendant argues only that there is no equitable tolling nor fraudulent concealment so as to render Plaintiff's claim timely.  Dkt. 18 at 13-14, 18-20.  While equitable estoppel has a similar origin and effect as equitable tolling, "it is a distinct doctrine."  *Benitez-Pons v. Com. of Puerto Rico*, 136 F.3d 54, 63 (1st Cir. 1998); see also *Henry v. Sheffield,* 856 F. Supp. 2d 345, 352–53 (D.R.I. 2012) [noting distinction between equitable tolling and equitable estoppel].[1]  As Defendant here never addresses the viability of Plaintiff's theory of equitable estoppel, Defendant forfeits any challenge to such allegations in this motion to dismiss.  For this reason alone, the motion should be denied.

Beyond this procedural defect, the complaint adequately alleges facts supporting a theory of equitable estoppel and as such the motion should be denied.

"Equitable estoppel may be applied 'to stop the running of the statute of limitations as a defense where the particular facts warrant its application.' *Wolf v. S.H. Wintman Co.*, 92 R.I. 470, 169 A.2d 903, 905 (1961); see also *Gross v. Glazier*, 495 A.2d 672, 673 (R.I.1985)."  *Henry v. Sheffield,* 856 F. Supp.

---

[1] See also *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 678–79 (1st Cir. 2011) [recognizing that the plaintiff does not need to define the equitable theory alleged with precision; "Indeed, rigidity frustrates the very purposes underlying these doctrines, which include, after all, the circumvention of unbending rules when strict fidelity to them would work an injustice. [] Recognizing the drawbacks of an inflexible approach to equitable adjudication, we will analyze Ortega's claim under both estoppel and tolling theories."]

2d 345, 352–53 (D.R.I. 2012) [denying summary judgment on ground that claim was time-barred, finding that equitable estoppel applied to preclude the raising of the untimeliness defense]; see also *Caianiello v. Shatkin*, 78 R.I. 471, 82 A.2d 826 (1951); *Martin v. Howard,* 784 A.2d 291 (R.I. 2001); *McAdam v. Grzelczyk,* 911 A.2d 255 (R.I. 2006).

"A defendant may be estopped from pleading the statute of limitations on the ground that *representations were made for the purpose of inducing the plaintiff to rely thereon* when the plaintiff did in fact so rely on the representations to his injury." *Wolf*, supra, 92 R.I. at 473–74, 169 A.2d at 905. The *Wolf* Court explained:

> In *Caianiello v. Shatkin, supra,* this court said at page 476 of 78 R.I., at page 829 of 82 A.2d: 'it appears that the principle of equitable estoppel is recognized in actions at law in order to stop the running of the statute of limitations as a defense where the particular facts warrant its application. But it also appears that such application requires more than mere inaction or silence by a person who has no obligation to speak or act in the premises. There must be some express representation or other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him to rely thereon to his disadvantage.'

*Id*. The Court thereafter summarized: "In other words, **if these plaintiffs,** *by reason of some affirmative conduct on the part of defendants* **relied on by them, were** *induced to allow the period of limitations to run* **without instituting these actions, they may invoke the doctrine of estoppel**." *Id*. (emphasis added).

Equitable estoppel, as applied by federal courts, echoes these same principles finding that "one may be 'estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made.'" See *Clauson v. Smith*, 823 F.2d 660, 662 (1st Cir. 1987), citing *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir.1945); *Sea-Land Service, Inc., v. R.V. D'Alfonso Co.*, 727 F.2d 1, 2 (1st Cir.1984). As noted by one Rhode Island District Court: "The doctrine of equitable estoppel 'is applied by courts **to preclude a litigant from asserting a claim or invoking a defense** *predicated upon his own wrongdoing*.' Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979)."

6

1   *Griffin v. Reich*, 956 F. Supp. 98, 106 (D.R.I. 1997) [further noting that the doctrine will not be applied

2   against the government *as readily as it may be asserted against private individuals*].

3       As alleged, the doctrine of equitable estoppel applies here to preclude Portsmouth Abbey from

4   taking advantage of its own wrongdoing intentionally designed to thwart the filing of any timely civil

5   action by Plaintiff.  As outlined above, in February 2017, when Plaintiff went to Portsmouth Abbey for

6   help after Smith continued to stalk and harass her even after the abuse had been revealed and Smith had

7   resigned, Portsmouth Abbey *knew* that Plaintiff's civil action against it for its role in the sexual abuse

8   *had not yet expired* and commenced a scheme to lull Plaintiff into losing her right to bring a civil lawsuit

9   against the school. Dkt. 11, ¶¶ 40-62.  The allegations reveal that Portsmouth Abbey hired Lewis Roca

10  to represent Plaintiff from February 2017 through November 2017, *which was coincidentally one month*

11  *after the then existing statute of limitations for claims against non-perpetrator defendants expired*.  ¶¶

12  59-61.  As alleged, Lewis Roca "slow walked" Plaintiff's case, allowing the statute of limitations to run

13  without ever initiating a claim against Portsmouth Abbey or even advising Plaintiff of the running

14  statute of limitations as against Portsmouth Abbey.  ¶ 61.

15      In a gross distortion of the facts alleged, Defendant argues that when Plaintiff reaching out to the

16  school in February 2017 following the continued and terrifying stalking of her by Smith, Defendant

17  simply "helped an alumna in need."  Dkt. 18 at 21. Not so.  Defendant did not "help" Plaintiff.  Rather,

18  Defendant engaged in a scheme to lull Plaintiff into failing to file a timely civil action against it.  In the

19  very least, the allegations raise disputed issues of fact concerning the doctrine of equitable estoppel

20  precluding a finding that it does not apply as a matter of law.

21      Rooted in the maxim that "no man may take advantage of his own wrong," equitable estoppel

22  exists where there is "some form of affirmative deception by the defendant" and reasonable reliance

23  thereon by the plaintiff.  See *Martin*, supra 784 A.2d at 302–03.  That is precisely what the allegations

24  support here.

25  ///

26  ///

27  ///

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND'S MOTION TO DISMISS**

**V.     THE MOTION TO DISMISS SHOULD FURTHER BE DENIED IN LIGHT OF THE ALLEGATIONS SUPPORTING APPLICATION OF EQUITABLE TOLLING**

In addition to equitable estoppel, which precludes the assertion of a defense of untimeliness, the complaint also alleges equitable tolling *to toll* the statute of limitations during the time Defendant's affirmative conduct and misrepresentations to Plaintiff thwarted the filing of any timely civil action against it. "'[E]quitable tolling is an exception to the general statute of limitations based upon principles of equity and fairness.'" *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1279–80 (R.I. 2017), citing *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002) [further noting that because the parties are not governmental entities, "the limitation to the equitable tolling of statutes of limitations for claims against the government based on sovereign immunity concerns is not applicable in the case before us."]; see also *Rivera v. Employees' Retirement System of Rhode Island*, 70 A.3d 905 (R.I. 2013).

The United States Supreme Court has explained:  "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently ***but some extraordinary circumstance prevents him from bringing a timely action***."  *Lozano v. Montoya Alvarez,* 572 U.S. 1, 10–11, 134 S. Ct. 1224, 1231–32 (2014), citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005) [emphasis added]; see also *Young v. United States,* 535 U.S. 43, 49–50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ["It is hornbook law that limitations periods are 'customarily subject to "equitable tolling,"' unless tolling would be 'inconsistent with the text of the relevant statute'"].  As outlined in *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004), a case cited by Defendant (Dkt. 18 at 14), "[t]he doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.' *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir.2003); see *Delaney v. Matesanz,* 264 F.3d 7, 13–14 (1st Cir.2001)."  The *Neverson* Court continued: "Statutory filing deadlines are presumptively subject to equitable tolling. See *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (referring to the "rebuttable presumption of equitable tolling"); *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985); see also *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (filing a timely

charge of discrimination with the EEOC is "a requirement that, like a statute of limitations, is subject to ... equitable tolling")."  *Neverson*, 366 F.3d at 40.

The allegations here reveal the very unique circumstances giving rise to a finding of equitable tolling of the statute of limitations.  At twenty years old, and after suffering traumatic childhood sexual abuse by an authority figure in her life, Plaintiff went to Portsmouth Abbey for help.  Under the guise of goodwill, Portsmouth Abbey arranged for a New Mexico law firm to represent Plaintiff, paid for her legal fees, all the while scheming with the law firm to delay any filing of a civil action against it until the statute of limitations expired. Dkt. 11, ¶¶ 40-62.  Notably, the law firm did not even assist Plaintiff with stopping the harassment by Smith.  Instead, it simply closed the file, mere weeks after the statute of limitations as against Portsmouth Abbey expired.  Such extraordinary facts warrant application of principles of equity so as to render Plaintiff's claim timely.  This is especially true where application of equity only provides Plaintiff with the *opportunity* to bring her action against Portsmouth Abbey; Plaintiff must still prove negligence and misconduct against Portsmouth Abbey.  In other words, a finding that equitable tolling applies does not alter the substantive issues or burdens as to the merits of the claim, but rather merely gives Plaintiff the opportunity to seek redress for her claims against Portsmouth Abbey.

In *Rivera*, a police officer missed the thirty-day statutory period for seeking judicial review of the denial of her application for accidental disability benefits, which period "beg[an] to run the day after the notice [of the decision was] mailed." *Id*. at 911.  Although two statements had been made by the board to the plaintiff providing misleading information to the effect that the deadline for seeking judicial review was thirty days from the receipt of the notice of the final decision, the trial court rejected any contention of equitable estoppel, finding that "the reliance on the agency's erroneous statements was unreasonable because Ms. Rivera's attorney should have been aware of the correct deadline." *Rivera*, 70 A.3d at 909, 913.  After "bearing in *mind all of the circumstances before us*," the High Court reversed and concluded that the appeal was timely pursuant to the doctrine of equitable tolling.  The same is true here.

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANT ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND'S MOTION TO DISMISS**

Notably, Defendants do not argue that their conduct cannot give rise to equitable estoppel. Rather, Defendants *only* response to the supposed inapplicability of equitable tolling is that "[e]ven accepting the truth of Jane's allegations that Portsmouth Abbey engaged in a 'scheme' between February 2017 and November 2017 to prevent her from suing with the eight months that remained in the limitations period,(by October 2017), she has offered nothing to explain why she then waited another three years and one month to sue Portsmouth Abbey."  Dkt. 18 at 15-16.  According to Defendant, "[e]quity cannot be stretched to the implausible extreme sought by Jane's tolling argument."  Dkt. 18 at 16. Defendant is mistaken.

First, Defendant ignores the allegations that it was precisely because of Defendant's misconduct and Plaintiff's reliance thereon that a claim was not timely filed against Portsmouth Abbey within the limitations period.  The issue of when the effect of such a misrepresentation ceased and whether reliance was reasonable involve questions of fact that cannot be disposed of on the allegations alone.  See *Rivera v. Employees' Ret. Sys. of Rhode Island*, 70 A.3d 905, 909–14 (R.I. 2013) [court engaged in fact based inquiry regarding whether reliance was reasonable]; *Lehigh*, supra, 173 A.3d at 1279 [citing same]; see also *Korsak v. Prudential Prop. & Cas. Ins. Co.,* 441 A.2d 832 (R.I. 1982) ["[Defendant's] sworn denial of facts he had attempted to perpetrate a fraud on insurer raised a question of material fact…required to be determined at trial].  Defendant offers no authority to support its position that the *effect* of the misconduct alleged, and Plaintiff's reasonable reliance thereon, ceased at the time the law firm told her that they were closing her file.  It was precisely *as a result of* the scheme orchestrated by Defendant, and Plaintiff's reasonable reliance thereon, that Plaintiff was unable to file a claim before December 1, 2020.

Second Defendant's analysis of the tolling of the statute of limitations is flawed.  Plaintiff does not need to establish that the tolling continued through to December 1, 2020 when she filed the instant action.  Rather, employing Defendant's position that Plaintiff had eight months remaining in the three-year statute of limitations as of February 2017 (when Defendants paid for Plaintiff's legal representation and engaged in a scheme to thwart the filing of any claim against it) Plaintiff need only show that the tolling occurred from February 2017 through *November 2018*.   Defendant fails to appreciate that effective July 1, 2019, the Legislature expanded the statute of limitations against non-perpetrator defendants to thirty-five years after the alleged wrongful sexual abuse. See § 9-1-51.  The statute

specifically states that the extended statute of limitations applies to claims that are not "*otherwise time-barred* under previous version of the general laws on the effective date of this section …" Id. Thus, so long as the tolling of Plaintiff's claim against Portsmouth Abbey continued through November 2018, and given that according to Defendant, Plaintiff had at least eight months remaining in the three-year statute of limitations, Plaintiff's action would not yet be time-barred at the time the expanded statute of limitations became effective on July 1, 2019. Based on the allegations, a trier of fact could conclude that scheme to prevent Plaintiff from filing her action against Portsmouth Abbey and her reasonable reliance thereon continued through November 2018.

As Defendant's only challenge to the equitable tolling analysis is that too much time passed for the reliance to be reasonable, which necessarily involves a factually intense analysis inappropriate at the pleading stage, Defendant's motion to dismiss on this ground should be denied.

## VI. THE ALLEGATIONS FURTHER SUPPORT APPLICATION OF THE FRAUDULENT CONCEALMENT DOCTRINE TO TOLL THE STATUTE OF LIMITATIONS RENDERING PLAINTIFF'S ACTION TIMELY

Pursuant to R.I. Gen. Laws § 9-1-20, "[i]f any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence." To sufficiently allege tolling of the statute of limitations based on fraudulent-concealment, the plaintiff "must demonstrate that the defendant made an 'express representation or [*engaged in] other affirmative conduct* amounting in fact to such a representation which could reasonably deceive another and induce him [or her] to rely thereon to his [or her] disadvantage.'" *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182-83 (R.I.2008); *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 466 (R.I. 2016) [quoting *Ryan*].

Again, the allegations sufficiently allege such misconduct and reasonable reliance thereon. In its Motion to Dismiss, Defendant argues that nothing in the allegations could have mislead Plaintiff to believe that a sexual assault did not occur, and thus fraudulent concealment does not apply. Dkt. 18 at 20. Such a superficial analysis fails to appreciate the facts of this case. Unlike in *Ryan* and *Hyde* (both cited by Defendant), it is not that the church defendant here failed to disclose facts concerning the basis

for liability against it – but that Defendant engaged in misconduct concerning the very *filing of an action* against it.  As recently explained in *Polanco v. Lombardi,* 231 A.3d 139, 153 (R.I. 2020), "the plaintiff must 'demonstrate that the defendant made an express representation or engaged in other affirmative conduct amounting in fact to such a representation which could reasonably ***deceive another and induce him or her to rely thereon to his or her disadvantage*.**' [Citation]" *Polanco*, at 153 [emphasis added].

The misrepresentation and misconduct alleged here concerned the *filing of a cause of action*.  The very attorneys hired to represent Plaintiff, paid for and arranged by Defendant, failed to disclose the statute of limitations of an action *against Defendant* despite its obligation to do so.  Plaintiff reasonably relied on their representation of her to her detriment.  The alleged deception tolls the running of the statute of limitations until at least November 2018, which as explained above renders Plaintiff's claim timely.

Thus, and as systemic of all of its arguments, Defendants' contention that equitable principles of estoppel and tolling, as well as fraudulent concealment, cannot as a matter of law render Plaintiff's claim timely are misplaced and predicated on the resolution of disputed facts.

## VII.   CONCLUSION

Thus, for numerous reasons, Defendant's motion to dismiss should be denied.  Alternatively, should the Court be inclined to grant any portion of the Motion to Dismiss, Plaintiff requests leave to amend so as to address any alleged inadequacies in the allegations that the Court may find.

Dated: February 26, 2021                               By Attorneys for Plaintiff,

 /s/ David M. Ring
 /s/ Neil K. Gehlawat
David M. Ring (CA Bar # 151124)
Neil K. Gehlawat (CA Bar # 289388)
TAYLOR & RING LLP
1230 Rosecrans Ave., Suite 360
Manhattan Beach, CA 90266
Phone: (310) 209-4100
Fax:     (310) 208-5052
Email: ring@taylorring.com;
Email:  gehlawat@taylorring.com

12

**<u>CERTIFICATE OF SERVICE</u>**

       I certify that on the 26th day of February, 2021, this Opposition to Defendant Order of St. Benedict in Portsmouth, Rhode Island's Motion to Dismiss was filed and served upon counsel of record via the Court's CM/ECF system.

                                 /s/ Neil K. Gehlawat

**PLAINTIFF'S OPPOSITION TO DEFENDANT ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND'S MOTION TO DISMISS**