# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**JANE DOE,**

        **Plaintiff,**

v.                      **C.A. No.: 2020-cv-500-WES-PAS**

**ORDER OF ST. BENEDICT in PORTSMOUTH, RHODE ISLAND, a religious entity, and MICHAEL BOWEN SMITH, an individual,**

        **Defendants.**

## PLAINTIFF JANE DOE'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO DEFENDANT ORDER OF ST. BENEDICT IN PORTSMOUTH, RHODE ISLAND'S MOTION FOR SUMMARY JUDGMENT

## (REDACTED)

Plaintiff, Jane Doe

By Her Attorneys,

/s/ David M. Ring
/s/ Neil K. Gehlawat
David M. Ring (CA Bar # 151124)
Neil K. Gehlawat (CA Bar # 289388)
TAYLOR & RING LLP
1230 Rosecrans Ave., Suite 360
Manhattan Beach, CA 90266
Phone: (310) 209-4100
Fax:    (310) 208-5052
Email: ring@taylorring.com
Email: gehlawat@taylorring.com
Dated: October 23, 2023

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.   INTRODUCTION ............................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

III. SUMMARY JUDGMENT STANDARD ............................................................. 6

IV.  SUMMARY JUDGMENT SHOULD BE DENIED AS TRIABLE ISSUES OF FACT EXIST AS TO WHETHER THE DOCTRINE OF EQUITABLE ESTOPPEL APPLIES TO *PRECLUDE* PORTSMOUTH ABBEY FROM CLAIMING THAT PLAINTIFF'S ACTION IS UNTIMELY ..................................... 6

   A.  The Doctrine of Equitable Estoppel is Not a Tolling Doctrine but Rather a Judicially Created Doctrine that Serves to Bar or Preclude a Party From Asserting a Particular Defense or Claim Where Circumstances Warrant Such. ....................................... 8

   B.  The Evidence Raises Triable Issues of Fact as to Whether Portsmouth Abbey Should be Estopped From Arguing that Plaintiff's Action is Untimely. ........................................... 11

V.   FURTHERMORE, AND ALTERNATIVELY, PLAINTIFF HAS INTRODUCED SUFFICIENT EVIDENCE TO SUPPORT A JURY'S FINDING OF EQUITABLE TOLLING. .......................................... 19

VI.  LASTLY, THE EVIDENCE ALSO RAISES TRIABLE ISSUES OF FACT AS TO WHETHER FRAUDULENT CONCEALMENT APPLIES TO TOLL THE STATUTE OF LIMITATIONS HERE. ...... 22

VII. CONCLUSION................................................................................................ 24

## TABLE OF AUTHORITIES

### Cases

*Benitez-Pons v. Com. of Puerto Rico*
    136 F.3d 54 (1st Cir. 1998) .......................................................................................... 10

*Bergeron v. Mansour*
    152 F.2d 27, 30 (1st Cir.1945) ...................................................................................... 7

*Caianiello v. Shatkin*
    78 R.I. 471 (1951) .................................................................................................... 6, 11

*Carmona v. Toledo*
    215 F.3d 124 (1st Cir. 2000) ......................................................................................... 6

*CEH, Inc. v. F/V Seafarer*
    70 F.3d 694 (1st Cir. 1995) ........................................................................................... 9

*Chernick v. National Surety Co.*
    50 R.I. 419 (1930) ....................................................................................................... 11

*Clauson v. Smith*
    823 F.2d 660 (1st Cir. 1987) ......................................................................................... 7

*Eddy v. Pascoag Fire Dist.*
    266 A.3d 747 (R.I. 2022) ............................................................................................. 11

*Faella v. Chiodo*
    111 A.3d 351 (R.I. 2015) ....................................................................................... 11, 18

*Griffin v. Reich*
    956 F. Supp. 98 (D.R.I. 1997) ...................................................................................... 7

*Gross v. Glazier*
    495 A.2d 672 (R.I.1985) .................................................................................... 6, 12, 18

*Henry v. Sheffield*
    856 F. Supp. 2d 345 (D.R.I. 2012) .............................................................................. 10

*Houllahan v. Gelineau*
    296 A.3d 710 (R.I. 2023) ...................................................................................... 8, 9, 10

*Hyde v. Roman Catholic Bishop of Providence*
    139 A.3d 452 (R.I. 2016) ............................................................................................. 23

*Johnson v. Newport County Chapter for Retarded Citizens, Inc.*
    799 A.2d 289 (R.I. 2002) ............................................................................................. 19

*Kelly v. Marcantonio*
    678 A.2d 873 (R.I. 1996) ............................................................................................... 2

*Korsak v. Prudential Prop. & Cas. Ins. Co.*
    441 A.2d 832 (R.I. 1982) ............................................................................................. 21

*Lehigh Cement Co. v. Quinn*
    173 A.3d 1272 (R.I. 2017) .................................................................................... 19, 21

iii

*Lozano v. Montoya Alvarez*
  572 U.S. 1 (2014) ........................................................................... 19

*Lutz Eng'g Co. v. Indus. Louvers, Inc.*
  585 A.2d 631 (R.I. 1991) ...................................................... 11, 12, 18

*Martin v. Howard*
  784 A.2d 291 (R.I. 2001) .............................................................. 19

*McAdam v. Grzelczyk*
  911 A.2d 255 (R.I. 2006) ................................................................ 6

*Neverson v. Farquharson*
  366 F.3d 32 (1st Cir. 2004) ...................................................... 19, 20

*Ortega Candelaria v. Orthobiologics LLC*
  661 F.3d 675 (1st Cir. 2011) .......................................................... 10

*Pace v. DiGuglielmo*
  544 U.S. 408 (2005) ..................................................................... 19

*Phelps v. Fed. Emergency Mgmt. Agency*
  785 F.2d 13 (1st Cir. 1986) .................................................. 7, 10, 17

*Polanco v. Lombardi*
  231 A.3d 139 (R.I. 2020) .............................................................. 23

*Reeves v. Sanderson Plumbing Prod., Inc.*
  530 U.S. 133 (2000) ...................................................................... 6

*Ret. Bd. of Employees' Ret. Sys. of State v. DiPrete*
  845 A.2d 270 (R.I. 2004) .............................................................. 10

*Rivera v. Employees' Ret. Sys. of Rhode Island*
  70 A.3d 905 (R.I. 2013) ...................................................... 9, 20, 21

*Ryan v. Roman Cath. Bishop of Providence*
  941 A.2d 174 (R.I. 2008) .................................................... 7, 9, 23

*Sanchez v. Alvarado*
  101 F.3d 223 (1st Cir. 1996) ........................................................... 6

*Wolf v. S.H. Wintman Co.*
  92 R.I. 470 (1961) ................................................................. passim

*Young v. Park,*
  116 R.I. 568 (1976) ....................................................................... 7

*Zambrana–Marrero v. Suarez–Cruz*
  172 F.3d 122 (1st Cir. 1999) ........................................................... 6

## **Other Authorities**

Rhode Island General Law section 9-1-20 ......................................... 9, 22

Rhode Island General Law section 9-1-51 ............................................ 22

**<u>Rules</u>**

Federal Rules of Civil Procedure, Rule 56(f) ................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Order of St. Benedict in Portsmouth, Rhode Island (hereinafter referred to as "Defendant" or "Portsmouth Abbey") once again seeks to avoid any liability for the rampant sexual molestation and abuse of Plaintiff Jane Doe, a prior student, by a former faculty member, Michael Bowen Smith ("Smith").  Plaintiff was just 14 years old when Smith began taking a sexual interest in her and began grooming her for sexual abuse and exploitation.  By Spring 2012, Smith, who was in his late 40s, began engaging in sexual activity with Plaintiff, who was only 15 years old at the time.  The sexual abuse continued and escalated throughout her junior and senior years as a student at Portsmouth Abbey and included digital penetration, oral copulation, and sexual and anal intercourse.  Despite repeated signs of sexual abuse and inappropriate conduct between Smith and Plaintiff, Portsmouth Abbey did nothing to intervene, nor protect Plaintiff from foreseeable sexual abuse by her teacher.

While Portsmouth Abbey's complete failure to supervise Smith and protect Plaintiff from the foreseeable sexual abuse while she was a student is deplorable, the course of conduct Portsmouth Abbey engaged in *after* the abuse came to light in 2015 is even more disturbing.  As alleged and now demonstrated by the evidence, in February 2017 when Plaintiff went to Portsmouth Abbey for help after Smith continued to stalk and harass her even after the abuse had been revealed and Smith had resigned, Portsmouth Abbey *knew* that Plaintiff's civil action against it for its role in the sexual abuse *had not yet expired* and commenced a scheme to lull Plaintiff into losing her right to bring a civil lawsuit against the school.  While Portsmouth Abbey argues it was only trying to "help" a former student, by hiring a law firm that primarily defends religious institutions in claims arising out of sexual abuse of children to thwart the filing of any civil action against Portsmouth Abbey until *after* the statute of limitations had run, the evidence paints a much darker picture.

In denying Portsmouth Abbey's earlier motion to dismiss the complaint, this Court held that Plaintiff sufficiently alleged facts upon which a trier of fact could conclude that the doctrine of equitable estoppel bars Portsmouth Abbey's defense of untimeliness. Dkt. 27, at 5-7, filed

8/18/21.  Now two years later, and after the parties have engaged in extensive discovery, the evidence entirely supports the allegations of the complaint.  In fact, the evidence revealing Portsmouth Abbey's misconduct is even worse than alleged.  Portsmouth Abbey was essentially the puppeteer pulling the strings of the law firm it hired to represent Plaintiff and, conveniently, close Plaintiff's case *one month after the expiration of the statute of limitations*.

As poignantly highlighted by the dissent in *Kelly v. Marcantonio*, more than twenty years ago and at a time when Rhode Island failed to recognize application of delayed discovery to non-perpetrator defendants in its statute of limitations (which has since been amended): "'Pedophiles are notoriously difficult to deter. The institutions that employ them, however, *are highly sensitive to questions of legal liability*. **These institutions are likely to do** *whatever will minimize their liability and insure their institutional survival*.'" *Kelly v. Marcantonio*, 678 A.2d 873, 885 (R.I. 1996) (dissent, emphasis added).  Such abhorrent tactics are precisely what has occurred here.  Portsmouth Abbey cannot now take advantage of its own wrong to argue that Plaintiff's action is untimely.  Nothing argued in the long-winded and at times rambling motion for summary judgment demonstrates otherwise.

For several reasons, the motion should be denied.

## II.    FACTUAL BACKGROUND[1]

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

---

[1] The extensive facts concerning Portsmouth Abbey's conduct in thwarting Plaintiff from timely filing a civil action are detailed in the accompanying Statement of Undisputed Facts.  These facts are also included throughout the legal arguments of this opposition.







███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

### III.    SUMMARY JUDGMENT STANDARD

"A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000).  It is only where the moving party "shows that there is no genuine dispute as to any material fact" that the party is judgment as a matter of law. Fed.R.Civ.P. 56(f). "A dispute is 'genuine' if '"the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."' [Citation.] 'A fact is material if it "carries with it the potential to affect the outcome of the suit under the applicable law."' [Citations.]." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996).   The reviewing Court views the facts "in the light most favorable to the non-moving party." *Zambrana–Marrero v. Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir. 1999). In doing so, the Court must draw all reasonable inferences in favor of the nonmoving party and may not make any credibility determines or weigh any evidence. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000).

### IV.    SUMMARY JUDGMENT SHOULD BE DENIED AS TRIABLE ISSUES OF FACT EXIST AS TO WHETHER THE DOCTRINE OF EQUITABLE ESTOPPEL APPLIES TO *PRECLUDE* PORTSMOUTH ABBEY FROM CLAIMING THAT PLAINTIFF'S ACTION IS UNTIMELY

Pursuant to the doctrine of equitable estoppel, a party cannot engage in affirmative conduct lulling his or her adversary in failing to bring a timely action and thereafter rely on that very delay as a defense to the action when later brought.  As held by the Rhode Island Supreme Court, "[a] defendant may be estopped from pleading the statute of limitations on the ground that *representations were made for the purpose of inducing the plaintiff to rely thereon* when the plaintiff did in fact so rely on the representations to his injury." *Wolf v. S.H. Wintman Co.*, 92 R.I. 470, 473-474 (1961); see also *Gross v. Glazier*, 495 A.2d 672, 673 (R.I.1985); *Caianiello v. Shatkin*, 78 R.I. 471, 82 A.2d 826 (1951); *McAdam v. Grzelczyk,* 911 A.2d 255 (R.I. 2006).

As highlighted by this Court in its order denying Portsmouth Abbey's motion to dismiss, the doctrine of equitable estoppel acts not as a "tolling theory" but rather "bars an offending party from asserting a statute of limitations defense altogether." Dkt. 27 at 5 citing *Wolf, supra*, at 473. "'Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity.'" Dkt. 27 at 5, citing *Phelps v. Fed. Emergency Mgmt. Agency,* 785 F.2d 13, 16 (1st Cir. 1986).

Equitable estoppel, as applied by federal courts, echoes these same principles finding that "one may be 'estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made.' *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir.1945). *See also Sea-Land Service, Inc., v. R.V. D'Alfonso Co.*, 727 F.2d 1, 2 (1st Cir.1984); *Precious Metals Assoc. Inc. v. Commodity Futures Trading Comm'n*, 620 F.2d 900, 908–09 (1st Cir.1980)." *Clauson v. Smith*, 823 F.2d 660, 662 (1st Cir. 1987). As noted by one Rhode Island District Court: "The doctrine of equitable estoppel 'is applied by courts **to preclude a litigant from asserting a claim or invoking a defense** *predicated upon his own wrongdoing*.' Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979)." *Griffin v. Reich,* 956 F. Supp. 98, 106 (D.R.I. 1997) (further noting that the doctrine will not be applied against the government *as readily as it may be asserted against private individuals*). [2]

---

[2] Portsmouth Abbey's contention that evidence of a "conspiracy" does not toll the statute of limitations is misplaced. Dkt. 61-1 at 37. Portsmouth Abbey cites a footnote from *Ryan* rejecting the plaintiffs' argument there that the court "should create a new exception to toll the running of the statute of limitations" based on the "disability" of being subject to a conspiracy. See *Ryan v. Roman Cath. Bishop of Providence*, 941 A.2d at 182, fn. 15, citing *Young v. Park,* 116 R.I. 568, 572–73 (1976). In *Young*, the Court explained that it would not add a new conspiracy disability "to the historic categories of insanity, imprisonment, minority or absence from the country." *Young* at pp. 572-573. Plaintiffs here do not argue "conspiracy" should be added as a disability tolling the statute of limitations. Rather, Plaintiff's rely on the doctrine of equitable estoppel – which is not a statutory disability tolling the statute of limitations but a judicially created equitable doctrine.

While the evidence here overwhelmingly supports triable issues of fact as to whether Portsmouth Abbey engaged in conduct warranting estoppel of its defense of untimeliness – Portsmouth Abbey does not even discuss the doctrine of estoppel until page 26 of its motion. Dkt. 61-1 at 33. According to Portsmouth Abbey, the doctrine of equitable estoppel does not act as a bar to an untimeliness defense but rather serves as a "tolling" doctrine. Dkt. 61-1 at 28. From there, Portsmouth Abbey argues that the doctrine does not apply here as to find such "would contravene the purposes served by statutes of limitation." Dkt. at 61-1 at 27.

All of this is wrong.

**A.    The Doctrine of Equitable Estoppel is Not a Tolling Doctrine but Rather a Judicially Created Doctrine that Serves to Bar or Preclude a Party From Asserting a Particular Defense or Claim Where Circumstances Warrant Such.**

According to Portsmouth Abbey, this Court's prior finding that unlike equitable tolling and fraudulent concealment, "equitable estoppel is not a tolling theory and instead bars an offending party from asserting a statute of limitations defense altogether" (Dkt. 27 at 5, citing *Wolf*, 92 R.I. at 473), is incorrect. Dkt. 61-1 at 33-34. Relying near exclusively on the recent Rhode Island Supreme Court decision in *Houllahan v. Gelineau*, 296 A.3d 710, 714 (R.I. 2023), Portsmouth Abbey argues that equitable estoppel is a tolling doctrine. However, it is Portsmouth Abbey that is incorrect.

In *Houllahan*, the plaintiffs brought an action against the Roman Catholic Diocese of Providence and other defendants for the sexual abuse they had suffered at the hands of priests in the Diocese during the 1970s and 1980s. *Houllahan, supra*, 296 A.3d at 715-718. The superior court dismissed the actions as untimely and the plaintiffs appealed. The primary argument on appeal was that the revival of the statute of limitations applying to *perpetrator defendants* applied because the church defendants, although not perpetrators of the abuse, conspired with and/or assisted the priest perpetrators so as to fall within the ambit of the revival statute of limitations. *Id*. at 719-723. The Supreme Court rejected the analysis explaining that the statutes of limitations unambiguously distinguished perpetrators from non-perpetrators. *Id*.

8

The Court then addressed alternative arguments raised by the plaintiffs, including an argument that the statute of limitations should be tolled in light of the defendants' alleged misconduct in fostering the very circumstances upon which the priests could sexually abuse the plaintiffs with impunity. *Id*. at 724-725, 715-718 [detailing misconduct at issue]. Under a heading entitled "Equitable Estoppel," the Court quoted Rhode Island General Law § 9-1-20 (the elements for fraudulent concealment) and its prior decision in *Ryan v. Roman Cath. Bishop of Providence,* 941 A.2d 174, 182 (R.I. 2008) and noted: "We have previously addressed this assertion." *Houllahan, supra,* 296 A.3d at 724.

*Ryan* involved similar circumstances to those in *Houllahan* where victims of sexual abuse by a priest argued that the statute of limitations had been tolled because the non-perpetrator church had fraudulently concealed the tortious conduct. *Ryan*, 941 A.2d at 182.

Considering the elements of fraudulent concealment to the facts before it, and in a near identical analysis of fraudulent concealment as the one in *Ryan*, the Court in *Houllahan* held that there were no allegations of misconduct warranting the tolling of the statute of limitations. *Houllahan, supra,* 296 A.3d at 724-725; see also *Ryan, supra*, 941 A.2d at 183. The Court concluded: "We therefore conclude that the statute of limitations is not tolled under theories of equitable estoppel or fraudulent concealment but is counted among the sins of silence committed by these defendants." *Houllahan* at 725.

It is this short passage from *Houllahan* that Portsmouth Abbey argues conclusively proves that the doctrine of equitable estoppel is a tolling doctrine and not a bar to a statute of limitations defense. The argument is a reach. Nowhere in *Houllahan* did the Court consider whether equitable estoppel was a bar as opposed to a tolling mechanism. See *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 702 (1st Cir. 1995) [courts should not take opinions to contain a holding that goes well beyond an issue discussed]. As is clear from its discussion and reliance on *Ryan*, the Court in *Houllahan* was focused on the issue of fraudulent concealment to toll the statute of limitations.

Furthermore, and as cited by Portsmouth Abbey, in *Rivera v. Employees' Ret. Sys. of Rhode Island*, 70 A.3d 905, 913 fn. 11 (R.I. 2013), the Supreme Court explained: "We are aware

that there is a high degree of conceptual overlap between equitable tolling and equitable estoppel and that courts throughout the nation have sometimes applied the equitable estoppel doctrine where we would have viewed the equitable tolling doctrine as more appropriate. [Citations]. If the two concepts are not siblings, they are at least first cousins." Dkt. 61-1 at 33.

The fact that the Court may have used the term "equitable estoppel" in *Houllahan* when its analysis more closely resembled that of equitable tolling and/or fraudulent concealment does not negate the nature of the equitable estoppel doctrine as a bar to asserting a particular defense. While equitable estoppel has a similar origin and effect as equitable tolling, "it is a distinct doctrine." *Benitez-Pons v. Com. of Puerto Rico*, 136 F.3d 54, 63 (1st Cir. 1998); see also *Henry v. Sheffield,* 856 F. Supp. 2d 345, 352–53 (D.R.I. 2012) [noting distinction between equitable tolling and equitable estoppel].[3]

As explained in *Wolf*, the doctrine of equitable estoppel serves "as a *bar* to defendants' assertion of the statute of limitations as a defense" and where appropriate "defendant may be *estopped* from pleading the statute of limitations." *Wolf*, 92 R.I. at 473 (emphasis added); see also *Ret. Bd. of Employees' Ret. Sys. of State v. DiPrete*, 845 A.2d 270, 284 (R.I. 2004) ["Under the doctrine of equitable estoppel, a party may be precluded from enforcing an otherwise legally enforceable right because of previous actions of that party."]; *Phelps v. Fed. Emergency Mgmt. Agency,* 785 F.2d 13, 16 (1st Cir. 1986) ["'Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity.'"].

The doctrine's application is not constrained to statutes of limitations defenses nor arguments of tolling. Indeed, courts have considered whether a party is equitably estopped from asserting a defense, other than statute of limitations, in a variety of contexts. (See *Eddy v.*

---

[3] See also *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 678–79 (1st Cir. 2011) [recognizing that the plaintiff does not need to define the equitable theory alleged with precision; "Indeed, rigidity frustrates the very purposes underlying these doctrines, which include, after all, the circumvention of unbending rules when strict fidelity to them would work an injustice. [] Recognizing the drawbacks of an inflexible approach to equitable adjudication, we will analyze Ortega's claim under both estoppel and tolling theories."]

*Pascoag Fire Dist.*, 266 A.3d 747, 750-752 (R.I. 2022) [considering the issue of whether equitable estoppel applied to bar the defendant employer from arguing that the employee failed to exhaust administrative remedies; while the court held that it did not, the analysis evidences that the doctrine is not one of "tolling" but preclusion of an affirmative defense]; *Lutz Eng'g Co. v. Indus. Louvers, Inc., 585 A.2d 631, 636-637* (R.I. 1991) [defendant was entitled to jury instruction that estoppel could apply to the plaintiff subcontractor's silence thereby warranting a verdict in favor of the defendant supplier]; *Faella v. Chiodo*, 111 A.3d 351, 357 (R.I. 2015) [in an action brought by police officers on disability retirement against town regarding entitlement to funds held in insurance company accounts bearing each officer's name, the plaintiff officers argued the town should be equitably estopped from denying viability of the insurance plan agreement].)

As held by the Rhode Island Supreme Court nearly a century ago: "Estoppel is a principle equitable in its nature employed to prevent inconsistency ... resulting in injustice." *Chernick v. National Surety Co.*, 50 R.I. 419, 422-23 (1930). "It is a ***bar*** which precludes a person from denying the truth of a fact he has agreed upon or has previously asserted or which, in legal contemplation, has become settled by judicial proceedings." *Id*. (Emphasis added).

Thus, equitable estoppel as has been alleged and demonstrated by the evidence here, acts as a *bar* to asserting a statute of limitations defense.

**B.      The Evidence Raises Triable Issues of Fact as to Whether Portsmouth Abbey Should be Estopped From Arguing that Plaintiff's Action is Untimely.**

As held in *Wolf* and recognized by this Court in its prior order, the equitable doctrine is appropriate in those situations where "a party, through express representations or other affirmative conduct, deceived another into relying to his or her detriment." Dkt. 27 at 5, citing *Wolf,* 92 R.I. at 473. Application of the doctrine "'requires more than mere inaction or silence by a person who has no obligation to speak or act in the premises. There must be some express representation or other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him to rely thereon to his disadvantage.'" *Wolf,* at 473-474, citing *Caianiello, supra,* 78 R.I. at 476. "In other words, **if these plaintiffs, *by reason***

*of some affirmative conduct on the part of defendants* relied on by them, were *induced to allow the period of limitations to run* without instituting these actions, they may invoke the doctrine of estoppel.*"* *Wolf* at 473-474 (emphasis added).

Whether estoppel applies is a question of fact. See *Gross v. Glazier*, 495 A.2d 672, 673-674 (R.I. 1985) [on appeal, the Rhode Island Supreme Court accepts a trial court's factual findings as long as the inferences and reasonable and logical and flow from the facts, and there was ample evidence to support the trial court's finding that equitable estoppel applied]; *Lutz Eng'g Co. v. Indus. Louvers, Inc.*, 585 A.2d 631, 637 (R.I. 1991) [ultimate determination as to whether judicial estoppel was applicable was within the province of the jury].

According to Portsmouth Abbey, it made no misrepresentations to Plaintiff or her family about any potential civil action and had no involvement in the relationship between Plaintiff and the Lewis, Roca law firm. Dkt. 61-1 at 31-41. Portsmouth Abbey argues that "there was just one communication between Jane and any Portsmouth Abbey administrator" between October 2014 and the filing of her lawsuit in December 2020. Dkt. 61-1 at 31. Portsmouth Abbey accuses Plaintiff of creating "a narrative" that Portsmouth Abbey wanted to "dupe" Plaintiff into not filing a timely civil action when Portsmouth Abbey was simply trying to be helpful and cooperative to Plaintiff and her family. Dkt. 16-1 at 14.

The picture painted by Portsmouth Abbey of its role in the events that transpired after it became aware of the sexual abuse Plaintiff suffered while a student at its school is untethered to reality. Throughout its motion, Portsmouth Abby feigns ignorance of any scheme to lull Plaintiff into failing to file a timely civil action against it and argues that it instead was simply trying to help Plaintiff and her family. Not surprisingly, Portsmouth Abbey goes to great lengths to separate itself from Lewis Roca, the defense firm with a history of representing the Catholic Church thar Portsmouth Abbey *paid and communicated* with throughout its representation with Plaintiff, wherein the firm "slow walked" Plaintiff's case until the statute of limitations had expired on any claim against Portsmouth Abbey, closing her file one month later.

Based on the evidence presented, a jury could absolutely find that the doctrine of equitable estoppel applies here to preclude Portsmouth Abbey from taking advantage of its own wrongdoing intentionally designed to thwart the filing of any timely civil action by Plaintiff.



14





████████████████████████████████████████████████████

███████████████████████████████

Faced with such evidence, a reasonable trier of fact could absolutely conclude that Portsmouth Abbey should be estopped from arguing that Plaintiff's action is untimely. From the moment Portsmouth Abbey learned of the sexual abuse by its teacher, it recognized the potential for a lawsuit by Plaintiff and her family for negligence in failing to protect her from the sexual abuse by Smith. Aware that Plaintiff's civil action *had not yet expired* in 2017, Portsmouth Abbey engaged in an elaborate course of conduct designed to lull Plaintiff into losing her right to bring a civil lawsuit against the school – which is precisely what happened.

In its motion for summary judgment, Portsmouth Abbey ignores all of this. See Dkt. 61-1 at 36-37. In 2017, and at a time when Portsmouth Abbey recognized Plaintiff had a claim and needed a conflict-free attorney, it purposely steered Plaintiff to a non-lawyer, McChesney, who had long worked for the Catholic Church and had specifically investigated the abuse suffered by Plaintiff which no one told Plaintiff, to "help" Plaintiff all the while being paid by Portsmouth Abbey. Portsmouth Abbey then arranged to pay the legal fees of Lewis, Roca in their representation of Plaintiff concerning the sexual abuse and harassment by Smith.

While Portsmouth Abbey argues that by the time Plaintiff retained Lewis, Roca, Portsmouth Abbey had no involvement with Plaintiff, the facts reveal otherwise. Portsmouth Abbey was not a mere bystander in the course of conduct that lulled Plaintiff from filing an action against it. Portsmouth Abbey *itself*, and through McChesney and Lewis, Roca, engaged in a scheme to run out the clock of any potential claim Plaintiff have against Portsmouth Abbey. See *Phelps*, *supra,* 785 F.2d 13 at 16 [noting that the "elements of traditional estoppel are plainly present in this case," where defendants' agents told the plaintiffs that they need not file a written proof of loss and the plaintiffs relied on such advice to their detriment.]

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ ████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████. Plaintiff reasonably relied on her attorneys to act in her best

interest – unaware Portsmouth Abbey was in communications with Lewis, Roca and actively

advising them to limit their representation of her to only the restraining order.

A jury must decide whether these facts support application of the equitable estoppel

doctrine.  As noted above, whether estoppel applies *is a question of fact*. See *Gross,* 495 A.2d at

673-674 (R.I. 1985); *Lutz Eng'g Co.,* 585 A.2d at 637; *Faella,* 111 A.3d at 357.  Notably, in

*Faella*, plaintiff police officers on disability retirement brought an action against the defendant

town regarding entitlement to funds held in insurance company accounts. The superior court

denied the town's motion for summary judgment and granted the plaintiff officers' cross motion

for summary judgment on the ground that the doctrine of equitable estoppel applied to bar the

town from denying viability of the insurance plan agreement as a matter of law.  *Faella v.*

*Chiodo*, 111 A.3d at 356.  In other words, the superior court found the evidence of the Town's

misconduct so overwhelmingly that no triable issue of fact existed thus warranting summary

judgment.  *Id*. at 356-357.  After noting that the doctrine should be sparingly applied and

especially so when involving a government entity defendant, the Supreme Court reversed finding

"we are constrained to conclude that summary judgment in favor of the plaintiffs was not

warranted."  *Id*. at 358.  The Court held that because of the "*multitude of factual issues that must*

*be resolved,*" the court's order finding that equitable estoppel applied as a matter of law was not

warranted.  *Id*.  Thus, in *Faella*, even where the doctrine was asserted against a government

entity defendant, the Court concluded that a fact finder must decide whether the Town should be

precluded from raising the invalidity of the agreement defense. Here too the record reveals triable issues of fact precluding summary judgment.

Portsmouth Abbey cannot simply ignore the evidence that exists in this case. While it claims that it was only trying to help Plaintiff, a jury must evaluate the credibility of such statements and decide whether Portsmouth Abbey's course of conduct foreseeably induced Plaintiff's failure to timely file a civil action against it.

Rooted in the maxim that "no man may take advantage of his own wrong," equitable estoppel exists where there is "some form of affirmative deception by the defendant" and reasonable reliance thereon by the plaintiff. *See Martin v. Howard*, 784 A.2d 291, 302–03 (R.I. 2001). That is precisely what the evidence supports here.

## V.    FURTHERMORE, AND ALTERNATIVELY, PLAINTIFF HAS INTRODUCED SUFFICIENT EVIDENCE TO SUPPORT A JURY'S FINDING OF EQUITABLE TOLLING.

In addition to equitable estoppel, there is also ample evidence to justify equitably tolling the statute of limitations during the time Defendant's affirmative conduct and misrepresentations to Plaintiff thwarted the filing of a timely civil action against it.

"'[E]quitable tolling is an exception to the general statute of limitations based upon principles of equity and fairness.'" *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1279–80 (R.I. 2017) (citing *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002)). The United States Supreme Court has explained, "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently **but some extraordinary circumstance prevents him from bringing a timely action**." *Lozano v. Montoya Alvarez,* 572 U.S. 1, 10–11 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (emphasis added). As outlined in *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004), "[t]he doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.' *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir.2003); see *Delaney v. Matesanz,* 264 F.3d 7, 13–14 (1st Cir.2001)." The *Neverson* Court continued, "Statutory filing deadlines are presumptively subject to equitable tolling. See *Irwin v. Dep't of Veterans Affairs*,

498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (referring to the "rebuttable presumption of equitable tolling"); *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985); see also *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (filing a timely charge of discrimination with the EEOC is "a requirement that, like a statute of limitations, is subject to ... equitable tolling")." *Neverson*, 366 F.3d at 40.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

        Such extraordinary facts warrant application of principles of equity so as to render Plaintiff's claim timely. This is especially true where application of equity only provides Plaintiff with the *opportunity* to bring her action against Defendant; Plaintiff must still prove negligence and misconduct against Defendant. In other words, a finding that equitable tolling applies does not alter the substantive issues or burdens as to the merits of the claim, but rather merely gives Plaintiff the opportunity to seek redress.

        In *Rivera v. Employees' Ret. Sys. of Rhode Island*, 70 A.3d 905, 913 (R.I. 2013), a police officer missed the thirty-day statutory period for seeking judicial review of the denial of her application for accidental disability benefits, which period "beg[an] to run the day after the notice [of the decision was] mailed." *Id*. at 911. Although two statements had been made by the board to the plaintiff providing misleading information to the effect that the deadline for seeking judicial review was thirty days from the receipt of the notice of the final decision, the trial court rejected any contention of equitable estoppel, finding that "the reliance on the agency's erroneous statements was unreasonable because Ms. Rivera's attorney should have been aware of

the correct deadline." *Id.* at 909, 913.  After "bearing in *mind all of the circumstances before us*," the Rhode Island Supreme Court reversed and concluded that the appeal was timely pursuant to the doctrine of equitable tolling.  The same is true here.

In its motion, Portsmouth Abbey argues in conclusory fashion that equitable tolling is inapplicable because Plaintiff was aware of the injuries caused by Smith's abuse and waited until December 2020 to sue PAS. Dkt. 61-1 at 45–46. Stated differently, Portsmouth Abbey's entire equitable tolling argument is premised on the notion that Plaintiff did not act diligently and waited too long. But again, Portsmouth Abbey's argument entirely ignores what happened prior to December 2020. Portsmouth Abbey affirmatively took action to mislead Plaintiff and ensure that any suit Plaintiff may eventually bring would be untimely. Indeed, after the "help" that Portsmouth Abbey, McChesney, and Lewis, Roca provided, Plaintiff was left hopeless and led to believe that her legal avenues were exhausted. This is precisely the sort of "extraordinary circumstance" that warrants equitably tolling the statute of limitations.

A determination of when the effect of Portsmouth Abbey's misrepresentations ceased and whether Plaintiff's reliance was reasonable involve questions of fact that cannot be disposed on summary judgment.  See *Rivera*, 70 A.3d at 909–14 (R.I. 2013) [court engaged in fact based inquiry regarding whether reliance was reasonable]; *Lehigh*, 173 A.3d at 1279 (citing same); see also *Korsak v. Prudential Prop. & Cas. Ins. Co.,* 441 A.2d 832, 835 (R.I. 1982) ("[Defendant's] sworn denial of facts he had attempted to perpetrate a fraud on insurer raised a question of material fact…required to be determined at trial).  Portsmouth Abbey offers no authority to support its position that the *effect* of the misconduct alleged, and Plaintiff's reasonable reliance thereon, ceased at the time the law firm told her that they were closing her file in March 2017.  It was precisely *as a result of* the scheme orchestrated by Portsmouth Abbey, and Plaintiff's reasonable reliance thereon, that Plaintiff was unable to file a claim before December 1, 2020.

As the evidence describe above shows, there is certainly grounds to toll the statute of limitations until 2020 when Plaintiff first learned she potentially had a claim against Portsmouth Abbey. Indeed, after Lewis, Roca closed her file, Plaintiff had no reason left to believe that she had any path to obtaining legal redress. Nothing changed Plaintiff's belief until student legal

services at UCLA informed her that she should look into law firms that specialize in sexual abuse.  A jury could conclude that the effect of Defendant's wrongdoing continued unabated until 2020 thus tolling the statute of limitations until 2020.

Notably, however, for the purposes of this motion, the Court need only find that the effect of the misconduct continued until November 2018.  Employing Portsmouth Abbey's position that Plaintiff had eight months remaining in the three-year statute of limitations as of February 2017 (when Portsmouth Abbey paid for Plaintiff's legal representation and engaged in a scheme to thwart the filing of any claim against it), Plaintiff need only show that the tolling occurred from February 2017 through *November 2018*.  This is because effective July 1, 2019, the Legislature expanded the statute of limitations against non-perpetrator defendants to thirty-five years after the alleged wrongful sexual abuse.  See § 9-1-51.  The statute specifically states that the extended statute of limitations applies to claims that are not "*otherwise time-barred* under previous version of the general laws on the effective date of this section …"  *Id.*  Thus, so long as the tolling of Plaintiff's claim against Portsmouth Abbey continued through November 2018, and given that according to Portsmouth Abbey, Plaintiff had at least eight months remaining in the three-year statute of limitations, Plaintiff's action would not yet be time-barred at the time the expanded statute of limitations became effective on July 1, 2019.  Based on the evidence described above, there is a reasonable inference that the scheme to prevent Plaintiff from filing her action against Portsmouth Abbey and her reasonable reliance thereon continued through 2020, and in the very least through November 2018.

Thus, a jury could conclude that in light of the intentional misconduct Portsmouth Abbey committed to ensure that the statute of limitations would expire, extraordinary circumstances exist to *toll* the statute of limitations, rendering this action timely.

VI.    **LASTLY, THE EVIDENCE ALSO RAISES TRIABLE ISSUES OF FACT AS TO WHETHER FRAUDULENT CONCEALMENT APPLIES TO TOLL THE STATUTE OF LIMITATIONS HERE.**

Pursuant to R.I. Gen. Laws § 9-1-20, "[i]f any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when

the person entitled to sue thereon shall first discover its existence." To sufficiently allege tolling of the statute of limitations based on fraudulent concealment, the plaintiff "must demonstrate that the defendant made an 'express representation or [*engaged in] other affirmative conduct* amounting in fact to such a representation which could reasonably deceive another and induce him [or her] to rely thereon to his [or her] disadvantage.'" *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182-83 (R.I.2008) (emphasis added); *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 466 (R.I. 2016) (quoting *Ryan*).

Again, the evidence sufficiently demonstrates such misconduct and reasonable reliance occurred. In its motion, Portsmouth Abbey argues that nothing in the evidence could have misled Plaintiff to believe that a sexual assault did not occur, and thus fraudulent concealment does not apply. Dkt. 61-1 at 21. Such a superficial analysis fails to appreciate the facts of this case. Unlike in *Ryan* and *Hyde* (both cited by Portsmouth Abbey), a jury could conclude that Portsmouth Abbey engaged in misconduct concerning the very *filing of an action* against it. As explained in *Polanco v. Lombardi,* 231 A.3d 139, 153 (R.I. 2020), "the plaintiff must 'demonstrate that the defendant made an express representation or engaged in other affirmative conduct amounting in fact to such a representation which could reasonably ***deceive another and induce him or her to rely thereon to his or her disadvantage***.' [Citation]" *Polanco*, at 153 (emphasis added).

The misrepresentation and misconduct alleged here concerned the *filing of a cause of action*. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Plaintiff reasonably relied on Lewis, Roca's representation of her to her detriment. The alleged deception tolls the running of the statute of

23

limitations until at least November 2018, which as explained above renders Plaintiff's claim timely.

Thus, and as systemic of all of its arguments, Portsmouth Abbey relies on its own distorted view of the facts to support its position that fraudulent concealment, equitable tolling and equitable estoppel do not apply as a matter of law.  A jury could find otherwise.

## VII.    CONCLUSION

For the foregoing reasons, summary judgment should be denied.

Plaintiff, Jane Doe

By Her Attorneys,

/s/ David M. Ring
/s/ Neil K. Gehlawat
David M. Ring (CA Bar # 151124)
Neil K. Gehlawat (CA Bar # 289388)
TAYLOR & RING LLP
1230 Rosecrans Ave., Suite 360
Manhattan Beach, CA 90266
Phone: (310) 209-4100
Fax:    (310) 208-5052
Email: ring@taylorring.com
Email: gehlawat@taylorring.com
Dated: October 23, 2023

**CERTIFICATE OF SERVICE**

    I certify that, on the 23rd day of October, 2023, this Memorandum in Support of Plaintiff's Opposition to Defendant Order Of St. Benedict In Portsmouth, Rhode Island's Motion for Summary Judgment (Redacted Version) was filed and served upon counsel of record via the Court's CM/ECF system.

                         /s/ Neil K. Gehlawat